■ JOHN PURIFICATI, Appellant, v BRIDIE M. B. PARICOS, Defendant, and JAMES BOSQUEZ, Respondent.—In an action for judgment declaring the plaintiff to be the biological father of Michael James Bosquez, the plaintiff appeals from an order of the Supreme Court, Orange County (Patsalos, J.), dated March 31, 1988, which, after a nonjury trial, dismissed the complaint.

Ordered that the order is affirmed, with costs, and the matter is remitted to the Supreme Court, Orange County, for entry of an appropriate judgment in accordance herewith.

The defendant Bridie M. Bosquez Paricos (hereinafter Pari-

cos), who currently resides with the plaintiff, married the defendant James Bosquez (hereinafter Bosquez) in 1978 and was divorced from him by judgment dated March 19, 1985. Two sons were born to Paricos during the marriage and it is not disputed that Bosquez is the father of Daniel, who was born December 13, 1981. Michael, of whom the plaintiff claims to be the father, was born February 17, 1984. The record establishes that the plaintiff, who is some 20 years older than both defendants and who remains married to another, commenced an adulterous relationship with Paricos prior to the time when Michael was conceived. It also establishes that the then still-married defendants continued to reside in the same household until after Michael's birth.

Paricos, who supported the plaintiff's application for a declaration that he is Michael's father, testified at trial that she ceased having sexual relations with Bosquez sometime in 1982. Bosquez testified that he and Paricos continued to regularly have intercourse until two weeks before his September 1984 departure from the marital residence. A human leucocyte antigen blood tissue test, conducted in 1985 during the course of a Family Court paternity proceeding commenced by Paricos against the plaintiff and ultimately dismissed without prejudice, revealed that there is a 99.85% chance that the plaintiff is Michael's biological father. However, the Supreme Court declined to credit Paricos's testimony as to when she ceased having intercourse with Bosquez and credited Bosquez's contrary testimony. We discern no basis for interfering with Supreme Court's credibility determination in this case (see, *Altman v Wallach,* 104 AD2d 391, 392), particularly in light of other inconsistencies in Paricos's testimony. Moreover, we are in complete agreement with Supreme Court that there is more involved here than scientific probabilities and that the plaintiff is equitably estopped from claiming paternity (see, *Biserka B. v Zdenko R.,* 133 AD2d 728; *Matter of Ettore I. v Angela D.,* 127 AD2d 6; *Hill v Hill,* 20 AD2d 923).

The plaintiff testified at trial that, some six months before Michael was born, Paricos told him she was pregnant with his child. He also acknowledged that after he and Paricos began living together and prior to the time when Paricos and Bosquez were divorced, he saw their separation agreement, a document which recites, *inter alia,* that both Daniel and Michael are children of the marriage. A similar recital is contained in the 1985 judgment of divorce, which incorporates by reference the defendants' separation agreement, pursuant to which Bosquez, up to and including the time of trial, paid

Paricos child support for both boys and exercised every authorized visitation with them. Moreover, it is undisputed that Bosquez paid all hospital and doctor bills related to Michael's birth and the record supports the Supreme Court's findings that Michael refers to Bosquez as "Daddy", that he regards Bosquez's mother as his grandmother, and that Bosquez has been developing an "excellent father" relationship with both siblings. Notwithstanding these facts, the plaintiff, who, although he resides with Paricos and the boys, also stays regularly each week in Queens where he works, did not seek to establish his paternity of Michael until more than three years after Michael's birth and more than one year after dismissal of Paricos's Family Court paternity petition. Because of his lengthy acquiescence in the nurturing of a relationship between Michael and Bosquez, the plaintiff is equitably estopped from terminating a relationship which is legally presumed to exist *(see, Biserka B. v Zdenko R., supra; Matter of Ettore I. v Angela D., supra)*.

The plaintiff's contention to the contrary notwithstanding, the Supreme Court did not err when it considered the best interests of the child in deciding this case and we agree with the Supreme Court that this standard does not call for a different result. The record amply supports the court's determination that, because of the plaintiff's age, the fact that he is legally married to another, the fact that he is regularly absent from the home where Michael resides, and the fact that there exists a strong father-son relationship between Michael and Bosquez, as well as a fraternal relationship between Michael and Daniel premised in part on their shared father, the relief the plaintiff seeks would be contrary to Michael's best interests. The court did not need psychological evidence nor did it need to interview the child to support its conclusion that the child would be traumatized by dissolving a close father-son relationship while concomitantly stigmatizing the child by branding him illegitimate. Eiber, J. P., Harwood, Balletta and Rosenblatt, JJ., concur.