■ In the Matter of RICHARD W., Respondent, v ROBERTA Y. et al., Appellants. (Proceeding No. 1.) In the Matter of RICHARD W., Appellant, v ROBERTA Y., Respondent. (Proceeding No. 2.) [658 NYS2d 506] —Yesawich Jr., J. Appeals (1) from an order of the Family Court of Albany County (Tobin, J.), entered April 17, 1996, which granted petitioner's application, in a proceeding (No. 1) pursuant to Family Court Act article 5, to adjudicate him the father of the child born to respondent Roberta Y., and (2) from an order of said court, entered April 17, 1996, which, in a proceeding (No. 2) pursuant to Family Court Act article 6, transferred the matter to Saratoga County Family Court.

The child who is the subject of these proceedings was born to respondent Roberta Y. (hereinafter respondent) in April 1993. Although respondent was unmarried when the child was conceived, she had married respondent William Y., with whom she had been cohabiting for several years, in November 1992. William believed himself to be the child's father and acted in a manner consistent with that belief both before and after her birth. In August 1993, petitioner filed a petition seeking an adjudication that he is the child's father. On the basis of testimony establishing that respondent had engaged in unprotected intercourse with petitioner during the relevant time period, and the results of a blood test that revealed a 99.53% probability that petitioner was indeed the child's father, Family Court entered an order of filiation over respondent's opposition.

On appeal, we reversed and remitted the matter to Family Court, directing that William be joined as a necessary party so that all claims with respect to the child's paternity could be adjudicated and all of the relevant circumstances considered in a single proceeding (212 AD2d 89). On remittal, Family Court joined William as a party respondent, appointed a Law Guardian to represent the child's interests and ordered that all parties submit to further scientific testing. Respondents sought to stay the order directing additional testing, arguing that the court should conduct a hearing to determine whether petitioner is equitably estopped from proving his paternity before ordering that William be tested. This request was denied, the tests were completed and a hearing was thereafter commenced, at which the test results—which excluded William as the father—were admitted into evidence.

At the close of the hearing, Family Court found that petitioner had successfully rebutted the presumption of legitimacy (see, e.g., Matter of Penny MM. v Bruce MM., 118 AD2d 979) and that respondents had failed to rebut the presumption of petitioner's paternity created by the blood test results (see, Family Ct Act § 532 [a]). The court then addressed and rejected respondents' equitable estoppel argument, concluding, inter alia, that although William had bonded with the child during the first four months of her life, their relationship "was not so established and functional a parent-child relationship as to

warrant application of estoppel". An order of filiation was entered from which respondents appeal.*

Preliminarily we note that, inasmuch as the resolution of the estoppel issue in respondents' favor would have rendered the results of William's blood test irrelevant (see, *Matter of Commissioner of Social Servs. of Tompkins County [Barbara A.] v Gregory B.*, 211 AD2d 956, 958), Family Court should have addressed that issue prior to directing that he be tested (see, *Matter of Leon L. v Carole H.*, 210 AD2d 484, 484-485; *Mancinelli v Mancinelli*, 203 AD2d 634, 636). The fact that testing was conducted did not, however, bar the court from thereafter deciding the estoppel issue (see, *Mancinelli v Mancinelli, supra*, at 636).

As to the merits of respondents' equitable estoppel defense— which was neither raised nor considered when this matter was previously before us—we find, given the totality of the evidence adduced at the hearing, that there should be a reversal. Though petitioner believed that he was the father as soon as he was informed of respondent's pregnancy in August 1992, he did not file a paternity petition until August 1993. Petitioner's silence and acquiescence for a full year (see, *Matter of Ettore I. v Angela D.*, 127 AD2d 6, 15), in the face of William's open and obvious assumption of the role of father, led William to reasonably believe in his parental status, and to act in reliance on that conviction. To permit petitioner to take over the parental role at this juncture would be unjust and inequitable (see, *Matter of James BB. v Debora AA.*, 202 AD2d 852, 853).

In so concluding, we have considered all of the actions William took, both before and after the birth (but prior to becoming aware of petitioner's allegations), in reliance upon his belief that he was the child's father. Thus, in addition to William's assumption of the actual physical and psychological burdens attendant to parenting a newborn, and the extent of the parent-child relationship that he forged with the baby after she was born, it is necessary to take into account the time, energy and money he expended to prepare for her arrival, his participation in decision making with regard to her upbringing and, not insignificantly, the fact that he married respondent earlier than he had otherwise planned so as to legitimize the child. William's testimony that he would have acted differently, and may have postponed the marriage, had he known that petitioner perceived himself to be the child's father was uncontroverted.

---

* The issues presented by petitioner's appeal from other aspects of Family Court's orders, not having been briefed, are deemed abandoned (see, *Gibeault v Home Ins. Co.*, 221 AD2d 826, 827, n 2).

With full knowledge that William was doing all of these things in the belief that he was the child's father, and despite ample opportunity to disabuse him of this notion, petitioner took no steps to do so. Bearing in mind that the best interests of the child should be a guiding concern in cases of this type (*see, Matter of Ettore I. v Angela D., supra*, at 14; *Purificati v Paricos*, 154 AD2d 360, 362), these facts, taken together, are sufficient to establish, prima facie, the elements necessary to support respondents' estoppel defense, shifting the burden to petitioner to show why it is not in the child's best interest to deny his petition on this ground (*see, Matter of Sharon GG. v Duane HH.*, 95 AD2d 466, 469, *affd* 63 NY2d 859).

Petitioner has not done this; indeed, consideration of the record as a whole leads to the conclusion that it is in the child's best interests to preserve her legitimacy (*see, Matter of James BB. v Debora AA., supra*, at 853-854) and her paternal bond and relationship with William, the only father she has ever known. Petitioner, who remains married to another woman (*see, Purificati v Paricos, supra*, at 362), has not demonstrated what benefit would accrue to the child as a result of granting his petition, aside from the desirability of knowing her true father, which is not, alone, enough to tip the scales in his favor (*see, Matter of Sharon GG. v Duane HH., supra*, at 469).

Mikoll, J. P., Crew III, White and Peters, JJ., concur. Ordered that the orders are reversed, on the facts, without costs, and petition dismissed.