In the Matter of RICHARD C. BOYLES, JR., Appellant, v ALMA BOYLES, Respondent.

Third Department, July 28, 1983

See *Boyles v Boyles,* 119 Misc 2d 16.

APPEARANCES OF COUNSEL

*Carl J. Silverstein* for appellant.

*Stephen L. Oppenheim* for respondent.

**OPINION OF THE COURT**

CASEY, J.

In view of the facts and circumstances of this case, we conclude that, although the child custody dispute herein is between a parent and a nonparent, Family Court erred in awarding custody to the parent without considering the best interests of the child.

The parties were first married in 1974 and they subsequently moved to Hawaii, where petitioner was stationed in the Army. They were divorced November 25, 1977 and they remarried February 18, 1978. The child who is the subject of this custody proceeding was born July 25, 1978. There are factual disputes as to whether the parties lived together shortly before and after the divorce and whether

respondent told petitioner that the child was his. In any event, the birth certificate, which was prepared on the basis of information provided by respondent, lists petitioner as the child's father, and the child has always had petitioner's last name. The parties and the child lived together in Hawaii as a family unit until February, 1981, when petitioner left Hawaii with the child and returned to Sullivan County, New York, where petitioner and respondent had grown up and were married. Again, there is a factual dispute as to whether petitioner took the child over respondent's objections or respondent consented.

Petitioner commenced this proceeding in April, 1982 and was granted temporary custody of the child pending a final determination of the custody issue. Respondent's contact with the child after petitioner removed him from Hawaii was minimal until she returned to Sullivan County in August, 1982. In violation of the temporary custody order, respondent took the child back with her to Hawaii, where she unsuccessfully fought petitioner's legal proceedings seeking return of the child and later fled to California with the child to avoid the mandate of the Hawaii courts. The child was ultimately returned to petitioner in December, 1982, and has since resided with him in Sullivan County.

Respondent filed a cross petition, seeking custody of the child, in which she alleges that petitioner is not the child's father. The parties and the child submitted to blood-grouping tests which excluded petitioner as the father. After a hearing, Family Court, relying on *Matter of Bennett v Jeffreys* (40 NY2d 543), concluded that since petitioner was not the child's father, respondent was entitled to custody irrespective of the child's best interests. This appeal ensued.

In concluding that this custody dispute must be resolved on the basis of the best interests of the child, we reject respondent's contention that the rule favoring a parent in a custody dispute with a nonparent is merely a device to facilitate resolution of difficult "emotion-laden cases". Rather, the rule fosters both the parent's "rights" and the well-being of the child "by recognizing that they ordinarily converge" (*Matter of Dickson v Lascaris,* 53 NY2d 204, 208). Conversely, where "extraordinary circumstances" ex-

ist, the law recognizes that those interests do not necessarily converge, and further inquiry into the child's best interests is then required before a custody dispute between a parent and nonparent may be resolved (*Matter of Bennett v Jeffreys, supra*). In *Bennett,* upon which both Family Court and respondent heavily rely, the court found extraordinary circumstances in the protracted separation of the mother from her child, the mother's lack of an established household, her unwed state and the attachment of the child to the custodian. In remitting the matter for a new hearing as to the child's best interests, the court noted (*supra,* p 551) that "the Appellate Division, in awarding custody to the mother, too automatically applied the primary principle that a parent is entitled to the custody of the child". We find Family Court committed a similar error herein for to conclude otherwise ignores not only the role played by respondent's conduct in creating the custody tangle, but also ignores the legitimate expectations of petitioner and, more importantly, the child arising out of such conduct.

Before discussing "extraordinary circumstances", we analyze an alternative theory advanced by petitioner: that respondent should be estopped from asserting that he (the petitioner) is not the child's father. An estoppel "is imposed by law in the interest of fairness to prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought" (*Nassau Trust Co. v Montrose Concrete Prods. Corp.,* 56 NY2d 175, 184). Here, respondent, through her words and deeds, has held petitioner out as the father of her child. She listed petitioner as the child's father on the birth certificate and the child has always had petitioner's last name. In cards and letters to petitioner's parents on behalf of the child, respondent referred to them as "Grandma" and "Grandpa". The parties lived together for more than two and one-half years after

the child was born, with no claim that petitioner was not the child's father.[1] In fact, respondent did not contend that petitioner was not the father until after this proceeding was commenced, when the child was nearly four years old. In sum, respondent, over a substantial period of time, created the opportunity for and effectively encouraged the development of a father-son relationship between petitioner and the child and, under the traditional theory of estoppel, she should be barred from now asserting petitioner's lack of paternity for the purpose of obtaining custody without showing that the child's best interests will be served thereby.

Respondent contends that petitioner knew or should have known he was not the father of the child, which has support in the record, and that, therefore, petitioner could not justifiably rely on respondent's representations that he was the father. The estoppel herein is not founded merely on respondent's false statements as to the identity of the child's father, but rather it arises out of petitioner's justifiable reliance upon respondent's conduct in effectively authorizing and encouraging the development of a father-son relationship between petitioner and the child, which misled him into the belief that respondent would not enforce whatever superior right she might claim by asserting that petitioner is not the father. Moreover, we conclude that, for public policy reasons, respondent, having held her child out as the legitimate son of her husband for a substantial period of time, should be precluded from thereafter bastardizing the child for the sole purpose of furthering her own self-interest in obtaining exclusive custody of the child (see *Hill v Hill*, 20 AD2d 923; cf. *State of New York ex rel. H. v P.*, 90 AD2d 434, 441 [SILVERMAN, J., concurring]).[2]

---

1. Respondent asserted at the hearing that she was coerced into remaining silent about petitioner's paternity. Family Court made no finding concerning this claim, but we find it unsubstantiated in view of her conduct and her admissions that she was employed, had access to the family car, was not physically restrained or abused and, yet, made no attempt to remove herself and her child from the family abode.

2. In finding an estoppel here, we recognize that the relevant factor in custody disputes is the child's best interests, not the interests of the parties to the dispute. An estoppel, however, does not exalt petitioner's interests over that of the child. Rather, it merely means that the court cannot treat the dispute as one between a parent and a

The foregoing estoppel analysis is based largely upon respondent's conduct as it relates to petitioner. Considering respondent's conduct and its impact upon the child, we conclude that even viewed as a custody dispute between a parent and a nonparent, the matter must be resolved on the basis of the child's best interests. "[I]ntervention by the State in the right and responsibility of a natural parent to custody of her or his child is warranted if there is first a judicial finding of surrender, abandonment, unfitness, persistent neglect, unfortunate or involuntary extended disruption of custody, or other equivalent but rare extraordinary circumstance which would drastically affect the welfare of the child. It is only on such a premise that the courts may then proceed to inquire into the best interest of the child and to order a custodial disposition on that ground" (*Matter of Bennett v Jeffreys,* 40 NY2d 543, 549, *supra*).

Family Court properly concluded that respondent had not abandoned the child (see *Matter of Dickson v Lascaris,* 53 NY2d 204, *supra*) and that respondent was not unfit; but, abandonment, neglect and unfitness are not the exclusive circumstances which trigger an inquiry into the child's best interests (*Matter of Bennett v Jeffreys, supra*). Here, during the first two and one-half years of the child's life, respondent's conduct had the effect of authorizing and encouraging the development of a father-son relationship between petitioner and the child. During the last two years, while the child has resided with petitioner, that relationship has undoubtedly grown. Indeed, it is undisputed that the child believes petitioner to be his father and Family Court recognized the probable traumatic effect on the child of suddenly terminating that relationship. Accordingly, we find that respondent, through her involvement in the creation and development of the father-son relationship between petitioner and the child, has put the child in a situation where his welfare could be affected drastically and, thus, an extraordinary circumstance exists requiring inquiry into the child's best interests.

The best interests issue is separate and distinct from the extraordinary circumstance issue and must be decided on

nonparent, but instead must inquire into the best interests of the child, as in the usual case of a dispute between parents.

the basis of evidence relevant to whether the child's best interests will be served by retaining custody in petitioner or by granting custody to respondent (*Matter of Bennett v Jeffreys, supra,* p 548). While we agree with Family Court that the same custodial disposition (custody to respondent) could result, we find, after reviewing the record, that there is insufficient information therein upon which to make an informed determination. The hearing focused mainly upon evidence relevant to the paternity, estoppel and extraordinary circumstance issues. On the best interests issue, the parties base their custody claims on psychological and/or sociological factors, but no relevant evaluations, reports or testimony of experts appears in the record. The matter must be remitted for further development of the record on the issue of the child's best interests.

The order should be reversed, on the law and the facts, without costs, and the matter remitted to the Family Court of Sullivan County for further proceedings not inconsistent herewith.

SWEENEY, J. P., KANE, YESAWICH, JR., and WEISS, JJ., concur.

Order reversed, on the law and the facts, without costs, and matter remitted to Family Court of Sullivan County for further proceedings not inconsistent herewith.