OPINION OF THE COURT
Joan S. Kohout, J.
Respondent Dianna Marie McC. requests that a previously made order of filiation, declaring petitioner to be the father of her son, be vacated. This application arises in the context of a custody action commenced by petitioner, and raises several unusual issues, most unique of which concerns the fact that both parties concede that Mr. B. is not the biological parent of the subject child John (J.J.). The petitioner, however, argues that the mother should be estopped from asserting that he is not the biological parent as a defense to his custody action and that she has failed to demonstrate a legal basis under CPLR 5015 (a) to vacate the previously made order of filiation.
This case was brought on by order to show cause by Mr. B., requesting an order of custody concerning the child known as John Joseph B., born on November 20, 1984. In the custody petition Mr. B. alleges that he is "the natural father” of the child. His petition demands that he be granted immediate temporary custody of his "son” because the mother is unfit, and ultimately that he be granted sole permanent custody.
At the time the order to show cause was filed, petitioner requested that he be permitted to present ex parte testimony in support of his application for immediate temporary custody pending the return date. Based upon petitioner’s testimony and the sworn allegations in the petition, it was clearly indicated to the court that Mr. B. was the father of the child John. After listening to the ex parte testimony, the court denied the request for an immediate award of temporary custody, and the petition was scheduled for an early date. Additionally, a Law Guardian was assigned to represent the child.
Subsequently, the mother appeared with counsel and interposed an answer containing an affirmative defense that Mr. B. was not the natural parent of the child. Since the question of paternity was of essential importance in determining Mr. B.’s status in this case, the court, in its discretion, treated the mother’s affirmative defense as a motion to vacate the order of filiation and scheduled a hearing to determine whether factual and legal bases existed for vacatur.
*251 At the hearing, it was clearly established that Mr. B. could not possibly be the father of this child, and that he did not meet Ms. McC. until the child was over one year old. Ms. McC. stated that the biological father of the child was an individual named Ron S. with whom she resided, first in Broome County and later in Syracuse, New York. The original birth certificate for the child shows the child’s birth name to be Juan Jose S., and notes the date of birth as November 20, 1984.[1]
In approximately May of 1986, the parties met in Rochester and within a few months Ms. McC. and her son relocated to Monroe County and resided with Mr. B. It is uncontested that both parties referred to Mr. B. as J.J.’s father and within the B.’s extended family J.J. was treated as if he was the petitioner’s son. This was done even though members of the B. family clearly knew that Mr. B. was not the natural parent of this child, and that the parties were not married.
Over the years, the parties had some discussions about possible adoption by Mr. B., but no adoption was ever effectuated.
In October of 1989, the parties executed a paternity agreement wherein Mr. B. acknowledged paternity of J.J. and which fraudulently stated that the surname S. was "an assumed name used by the father at the time of the child’s birth”. Furthermore, the parties agreed to share support obligations for the child. Subsequently, in December of 1989, a paternity action was commenced by Ms. McC. based on this agreement. As a result of the paternity action,[2] an order of filiation declaring Mr. B. to be the child’s father was entered in the office of the clerk of Monroe County Family Court on January 23, 1990.
*252 CONCLUSIONS OF LAW
The petitioner correctly argues that motions to vacate existing orders are governed by CPLR 5015 (a). CPLR 5015 (a) (3) permits a court to vacate a prior order based upon "fraud, misrepresentation, or other misconduct of an adverse party”. Relying on this section, Ms. McC. argues that she signed the paternity agreement and commenced the paternity action under duress, because she was fearful of Mr. B. who had threatened her and had previously been physically abusive to her. Additionally, she argues that the action was fraught with fraud since both parties misrepresented the parentage of the child to the court. Finally, Ms. McC. makes what can best be termed an argument that the interest of justice demands that the order be vacated based upon the circumstances involved, and because in truth another man, not petitioner, is her son’s father.
Mr. B., in his defense, strongly argues that there was no duress involved in the case and that any fraud is not of the type that would warrant a vacatur of the order of filiation. Finally, he maintains that the principle of equitable estoppel should be applied and the mother prevented from asserting at this late date that he is not the child’s parent.
The court concurs with the petitioner that the proof of duress presented is insufficient to allow the court to vacate the order of filiation, and that the intrinsic fraud shown should not affect the enforceability of the order. It has been held that only fraud which is extrinsic to the case will provide a basis to vacate under CPLR 5015 (a) (3) (see, Shaw v Shaw, 97 AD2d 403). Thus, fraud that occurs during the case or intrinsic fraud, such as perjury by a witness, has for policy reasons been found to be insufficient to support a vacatur (see, Matter of Lockett v Juviler, 65 NY2d 182, 186). The court can find no case law on whether or not the facts here would constitute the type of "misconduct” which would permit the order of filiation to be set aside under CPLR 5015 (a) (3). For the reasons outlined below, however, the court does not need to resolve that issue in this case.
It has long been held that courts have broad discretionary power beyond that granted by statute to vacate a judgment in the substantial interest of justice (Ladd v Stevenson, 112 NY 325, 332; Firemen's Fund Ins. Co. v Dietz, 110 AD2d 1083). The Second Department in the case of Matter of Delfin A. (123 AD2d 318) affirmed Family Court’s power to set aside its own *253 orders in the interest of justice, noting that CPLR 5015 was not meant to limit the court’s broad discretion to vacate orders which were improperly made.
Based upon the testimony and exhibits presented at the hearing, the court finds that the order of filiation should be vacated as a matter of discretion and in the interest of justice.
It appears that Mr. B. sought to use a paternity action as an alternative to adoption and in doing so fraudulently represented to the Family Court that he was the biological parent of this child. Adoption is strictly governed by statute, and there is no common-law right to adopt (see, Domestic Relations Law § 110; Matter of Robert Paul P., 63 NY2d 233). Consequently, the fact that a child has lived with a nonparent for a period of time or considers that person to be a parental figure does not create a legal parent-child relationship. The Legislature surely did not contemplate the use of paternity actions to circumvent the careful procedural safeguards involved in the adoption process, which includes notice to unconsenting parents, home studies and determinations that placement is in the child’s best interest (Domestic Relations Law § 110 et seq.X Thus, there are strong policy reasons to deter the fraudulent use of paternity petitions to give legal status to a man who is not the father of a particular child.
Nor should respondent be estopped from asserting that Mr. B. is not her son’s father because she too made misrepresentations to the court during the paternity action. While New York courts have often applied the principle of equitable estoppel to bar a denial of paternity, it has generally been applied only when a husband seeks to deny parentage of a child born during the marriage (see, e.g., Matter of Sharon GG. v Duane HH., 95 AD2d 466, affd 63 NY2d 859). Similarly, it has been held that a mother will not be permitted to assert that her husband was not the father of her child when she had acquiesced over a period of time in the development of a father-child relationship (Purificati v Paricos, 154 AD2d 360). These cases, however, are distinguishable from the case at hand since Mr. B. always knew he was not J.J.’s father and a vacatur of the order of filiation would not affect an established relationship with a marital child.
It is also noteworthy that this is not a case where the order of filiation has been in existence for many years, or the petitioner has acted in reliance on it for a prolonged period. Indeed, the order was only entered a few months before this *254 action was commenced. Furthermore, it cannot be said in this case that Mr. B. relied to his detriment on the order of filiation since he well knew that it was based on a factual misrepresentation and that he was not the biological father of the child.
Based upon the foregoing, the paternity action is hereby restored and the order of filiation is vacated in the interest of justice. Furthermore, based upon the statements of both parties at the hearing the court on its own motion dismisses the paternity petition since it is beyond dispute that Mr. B. could not possibly be the biological parent of the child.
This court has previously signed a temporary order of visitation under the custody proceeding. That temporary order is now vacated. The Court of Appeals has unequivocally held that it is without authority to grant visitation to the mother’s former paramour who is not the father of the child (Matter of Ronald FF. v Cindy GG., 70 NY2d 141). The court, however, will grant the petitioner leave to amend his petition to allow him to assert facts, if they exist, that would permit him to seek custody of the child as a nonparent (see, Matter of Bennett v Jeffreys, 40 NY2d 543).

. The circumstances of the child’s birth are further complicated by the fact that respondent was married at the time of the birth to James McC. Although no father was named on the original birth certificate, the presumption of legitimacy attached to the birth and the child was, therefore, legally presumed to be the issue of the marriage. (Matter of Findlay, 253 NY 1.) The Hearing Examiner who made the order of filiation did not consider the mother’s marriage, although her marital status was clearly outlined in the paternity agreement. The better practice would have been to notice the husband of this proceeding prior to granting an order, and to consider the appointment of a Law Guardian for the child since he risked losing his legal status as a presumed child of the marriage.

. Both parties appeared before a Hearing Examiner on the paternity petition. Ms. McC. appeared with an attorney who had assisted in the preparation of the paternity agreement and Mr. B. was pro se. The same attorney later represented Mr. B. to commence the custody action. New counsel was substituted in when the conflict of interest became clear.