[676 NYS2d 677]

JEAN MABY H., Respondent, v JOSEPH H., Appellant.

Second Department, August 17, 1998

## APPEARANCES OF COUNSEL

*Samuelson, Rieger & Yovino,* New York City (*Kieth I. Rieger, Richard L. Hause, Michelle M. Mini* and *Wendy B. Samuelson* of counsel), for appellant.

*Alexander Potruch, P. C.,* Mineola, for respondent.

## OPINION OF THE COURT

Joy, J.

The question raised on this appeal is whether a nonbiological parent may invoke the doctrine of equitable estoppel to preclude the biological parent from cutting off custody or visitation with the child. Under the particular circumstances of this case, the answer must be in the affirmative.

When the plaintiff, Jean Maby H., and the defendant, Joseph H., began dating in December 1987, the plaintiff was already pregnant with the subject infant, Kelly H., who had been fathered by a man other than the defendant. The parties began to live together at about the time that Kelly was born in May 1988. They were married in October 1990, and in March 1992 the plaintiff gave birth to the parties' son, Todd H.

The plaintiff commenced the instant divorce action in June 1995, seeking, *inter alia,* custody of Kelly and Todd, child support solely for Todd, and a judgment declaring that the defendant was not Kelly's father. Simultaneously with the commencement of the action the plaintiff moved for pendente lite relief, including, *inter alia,* an order granting her sole custody of Kelly and Todd and denying the defendant any visitation with Kelly. The defendant cross-moved, *inter alia,* for an order granting him custody of both Kelly and Todd and/or visitation rights with both children, alleging that over the years he had developed a father-daughter relationship with Kelly and that Kelly had been held out at all times and by all concerned as his daughter.

On September 21, 1995, the court granted the defendant temporary visitation with Kelly and Todd; however, the court subsequently ordered a hearing on the limited issue of whether the defendant could invoke the doctrine of equitable estoppel to preclude a challenge to his fatherhood of Kelly.

In its memorandum decision issued after the hearing, the court noted that, although the defendant conceded that he was not Kelly's biological father, he was present at Kelly's birth, and the parties had lived together for approximately two years after Kelly's birth before they were married. The court further noted that:

"There is no doubt that while the plaintiff knew that defendant was not the father of her daughter she did hold him out as her daughter's father for purposes of medical insurance, medical treatment, attendance at school and with respect to neighbors and friends, although family members and certain friends knew that defendant was not the biological father. Plaintiff's daughter called and referred to defendant as 'Daddy', and plaintiff did not object to the use of such appellation. Defendant has also contributed to the support of plaintiff's daughter.

"Plaintiff's daughter was permitted to develop a typical grandparent-grandchild relationship with defendant's parents, and on the evidence submitted it is clear that a father-daughter relationship between defendant and plaintiff's daughter existed as well. Despite plaintiff's challenge to the qualitative nature of that relationship, it did exist, defendant performing many of the usual functions of a father with respect to a child".

After determining that there was no claim by the defendant that the plaintiff was an unfit parent, the court addressed the proof regarding equitable estoppel: "In this case, the evidence would seem to suggest that defendant has established a *prima facie* basis for the application of equitable estoppel. Although he is not the biological father, he has been held out as plaintiff's daughter's father, a father-daughter relationship has been established, and defendant has provided support. It is difficult to comprehend how severing that relationship after more than seven years can be anything but detrimental to the girl. Despite having been informed that defendant is not her biological father, defendant is the only father she has ever known. Their relationship is now strained, due, in part, to plaintiff's efforts. Nevertheless, the expert evidence suggests that relationship can be repaired, and that the defendant remains the 'psychological' father".

Notwithstanding its determination that the "application of equitable estoppel [appeared] warranted in this case", the court concluded that *Matter of Ronald FF. v Cindy GG.* (70 NY2d 141) and *Matter of Alison D. v Virginia M.* (77 NY2d 651) precluded such application since, in its view, the doctrine was inconsistent with those cases. The court read *Matter of Ronald FF. v Cindy GG. (supra)* and *Matter of Alison D. v Virginia M. (supra)* as standing for the proposition that a nonbiological or nonadoptive parent could never seek custody or visitation. The court also concluded that since there was no evidence that the plaintiff was unfit as a parent, the defendant could not seek

custody of Kelly, relying upon *Matter of Bennett v Jeffreys* (40 NY2d 543) and its progeny. Thus, the court concluded that the defendant was not entitled to seek or obtain custody of or visitation with Kelly. We now reverse the order entered upon the decision.

In general, the doctrine of equitable estoppel "is imposed by law in the interest of fairness to prevent the enforcement of rights which would work [a] fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought" (*Nassau Trust Co. v Montrose Concrete Prods. Corp.,* 56 NY2d 175, 184; *see, Matter of Boyles v Boyles,* 95 AD2d 95, 97; *Matter of James BB. v Debora AA.,* 202 AD2d 852, 853; *Matter of Ettore I. v Angela D.,* 127 AD2d 6, 12).

Courts have recognized the availability of this doctrine as a defense in various proceedings involving challenges to paternity (*see, e.g., Matter of Lorie F. v Raymond F.,* 239 AD2d 659 [former wife estopped from seeking to compel former husband to undergo HLA blood test to determine parentage after having represented him as the father of the child for eight years and encouraged the development of a parent-child relationship]; *Matter of Louise P. v Thomas R.,* 223 AD2d 592 [father estopped from challenging six-year old order of filiation and support after mother informed him he was not the child's biological father]), including cases where there is evidence that the person seeking to avoid estoppel is not a biological parent (*see, Matter of Richard W. v Roberta Y.,* 240 AD2d 812 [biological father, who was not wed to mother, estopped from establishing paternity after silently acquiescing for over one year as the mother's husband and the child in question formed a father-daughter relationship before filing petition for an order of filiation]; *Mancinelli v Mancinelli,* 203 AD2d 634, 635 [the husband, who was aware at the time of the child's birth that he may not be the father, was estopped from denying paternity in order to avoid child support obligations after he "acknowledged and acquiesced in the parent-child relationship" for more than two years]).

The paramount concern in applying equitable estoppel in these cases has been, and continues to be, the best interests of the child (*see, Matter of Louise P. v Thomas R., supra,* at 593; *Matter of Glenn T. v Donna U.,* 226 AD2d 803; *Matter of Ettore I. v Angela D., supra,* at 13).

In *Matter of Boyles v Boyles (supra),* the child was born during the course of the parties' remarriage and upon their

subsequent separation the husband obtained temporary custody of the child. The wife, who was the biological mother, brought a petition seeking custody of the child alleging that the husband was not the child's biological father. The Appellate Division, Third Department, concluded that "under the traditional theory of estoppel, [the wife] should be barred from now asserting [the father's] lack of paternity for the purpose of obtaining custody without showing that the child's best interests will be served thereby" (*Matter of Boyles v Boyles, supra,* at 98).

Similarly, in *Matter of Lorie F. v Raymond F.* (239 AD2d 659, *supra),* a former wife was estopped from seeking to compel her former husband to submit to genetic testing to prove his lack of parentage. In that case, the parties were divorced and shared custody of the child, who had been born during the marriage, with physical custody granted to the former husband. One year later the former wife sought sole custody, alleging that the former husband was not the child's biological father. The Appellate Division, Third Department, affirmed the order denying her petition on the ground of equitable estoppel, stating that "any other determination would not have served the child's best interest" (*Matter of Lorie F. v Raymond F., supra,* at 661; *see also, Matter of Kim Marie V. v Michael S.,* 195 AD2d 985 [in a divorce proceeding, the wife's petition to compel the husband to submit to a blood test was denied on the ground of equitable estoppel since the 5-1/2-year-old child, born during the marriage, had been supported by the husband all of her life, the husband wanted to continue his father-daughter relationship with the child, and the purported biological father denied paternity]).

The doctrine of equitable estoppel was also applied in *Matter of Christopher S. v Ann Marie S.* (173 Misc 2d 824), a case similar, in certain respects, to the instant case. In *Christopher S.,* although the husband was aware that the child was not his, the parties were married shortly after the child was born, the child was given the husband's surname, was treated as the husband's child, and believed that the husband was his father. Moreover, a second child was born of the marriage. After five years of marriage the parties divorced and shared custody of the two children; the husband paid child support for both. The custody dispute arose after the husband subsequently moved for sole custody of the children because of alleged domestic violence in the mother's household attributable to her boyfriend. In concluding that the mother was estopped from claim-

ing that the husband was not the child's father, the Family Court stated that there was "no logical reason for allowing the doctrine of equitable estoppel to be used to advance the best interests of the child in a paternity case and to disallow application of that doctrine in the context of a custody case, not involving issues of paternity. In each situation, the fundamental rights sought to be protected and the reasons advanced for protecting those rights are identical—the best interests of the child involved" (*Matter of Christopher S. v Ann Marie S., supra,* at 829).

As the Family Court in *Matter of Christopher S. v Ann Marie S. (supra)* observed, it is inconsistent to estop a nonbiological father from disclaiming paternity in order to avoid supporting the child, but preclude a nonbiological father from invoking the doctrine against the biological mother in order to continue a long-standing relationship with the child. It would seem particularly appropriate to apply the doctrine under the circumstances of this case. "[C]ourts [are] more inclined to impose equitable estoppel to protect the status interests of a child in an already recognized and operative parent-child relationship" (*Matter of Baby Boy C.,* 84 NY2d 91, 102, n; *see also, Matter of Lorie F. v Raymond F., supra,* at 660; *Matter of James BB. v Debora AA.,* 202 AD2d 852, *supra).*

The plaintiff herein points to certain Court of Appeals cases and contends that they establish the principle that the doctrine of equitable estoppel is inapplicable here because the defendant is not Kelly's biological father, and that as a nonbiological parent he is a "legal stranger" who is not entitled to either custody or visitation with Kelly. However, contrary to her contentions, we do not read those cases as precluding the application of equitable estoppel in this case. Indeed, such an interpretation would effectively preclude the application of the doctrine in a myriad of cases such as those cited above.

In *Matter of Bennett v Jeffreys* (40 NY2d 543, 549, *supra),* the Court of Appeals held that unless there was proof of "abandonment, unfitness, persistent neglect, unfortunate or involuntary extended disruption of custody, or other equivalent but rare extraordinary circumstance which would drastically affect the welfare of the child", a person who was not a biological parent had no standing to apply for custody in the face of opposition by a biological parent. In *Matter of Ronald FF. v Cindy GG.* (70 NY2d 141, *supra),* the Court of Appeals declined to extend *Bennett's* extraordinary circumstances rule to allow a nonbiological individual to have visitation with a child against

the wishes of the custodial parent, holding that "[v]isitation rights may not be granted on the authority of the * * * extraordinary circumstances rule, to a biological stranger where the child, born out of wedlock, is properly in the custody of his mother" (*Matter of Ronald FF. v Cindy GG., supra,* at 142). While noting that "visitation is a subspecies of custody", the Court of Appeals explained that the two relational categories differed fundamentally in degree, thereby precluding a casual extension of the extraordinary circumstances rule to the area of visitation (*Matter of Ronald FF. v Cindy GG., supra,* at 144). The Court of Appeals concluded that absent a showing of unfitness on the part of the biological parent or "some compelling State purpose which furthers the child's best interests", the State could not interfere with the biological parent's fundamental right to choose "with whom [his or] her child associates" (*Matter of Ronald FF. v Cindy GG., supra,* at 145, 144). Finally, in *Matter of Alison D. v Virginia M.* (77 NY2d 651, *supra),* the Court of Appeals ruled that the homosexual partner of the biological parent of the subject child could not petition for visitation with the child absent a finding of unfitness on the part of the biological custodial parent.

Upon first blush, it would appear that these cases stand for the blanket proposition that a nonbiological parent could never have standing to seek visitation if the biological parent was otherwise deemed a fit parent. However, upon closer scrutiny it becomes apparent that *Matter of Ronald FF.* and *Matter of Alison D.* are distinguishable on their facts. In *Matter of Ronald FF.,* it is notable that the nonbiological father never raised the doctrine of equitable estoppel (*see also,* Samuelson, *Is the Doctrine of Equitable Estoppel Viable in a Child Custody Dispute?,* 29 Fam L Rev No. 1, at 2 [Mar. 1997]). Moreover, the father and mother were never married and they resided together off and on for approximately two years after the child was born. While the father and child had developed a relationship during that time, the father was not residing with the mother and child when he brought the petition to stay her relocation to Texas. In *Matter of Alison D.,* the issue of equitable estoppel was "merely brushed upon by the gay cohabitant" (Samuelson, *Is the Doctrine of Equitable Estoppel Viable in a Child Custody Dispute?, op. cit.,* at 2).

A further rationale for not blindly applying the apparent rule espoused in *Matter of Ronald FF. (supra)* and *Matter of Alison D. (supra)* is the fact that the recent decisions of the Court of Appeals have placed a greater emphasis on the best

interests of the child as the determinative or prevailing concern. For instance, in *Matter of Tropea v Tropea* (87 NY2d 727), a child custody case arising out of a proposed relocation of the custodial spouse with the child, the court replaced a three-tiered analysis with a best interests of the child analysis (*see also,* Samuelson, *Is the Doctrine of Equitable Estoppel Viable in a Child Custody Dispute?, op. cit.,* at 2 ["the best interests of the child should prevail over the competing interests of parent and nonparent whenever the circumstances of the case indicate that it would be deleterious to sever the child's relationship established over a protracted period"]).

In concluding that these Court of Appeals cases are distinguishable, we are of the opinion that the best interests of the child will not be served in this case if *Matter of Ronald FF. (supra)* and *Matter of Alison D. (supra)* are blindly applied.

We are further of the opinion that the record supports a finding, which was implicitly made by the Supreme Court, that the defendant established a prima facie basis for invoking the doctrine of equitable estoppel. With the plaintiff's acquiescence, the defendant was named as Kelly's father on her birth certificate, he was held out as Kelly's father to others for over seven years, during which time he established a strong father-daughter relationship, and he supported Kelly financially throughout the marriage. Moreover, the defendant was the only father figure in Kelly's life, and until February 1995 Kelly always believed that the defendant was her biological father. Together, these facts are sufficient to establish a prima facie basis for invoking the defense of equitable estoppel (*see generally, Matter of Lorie F. v Raymond F., supra,* at 660; *Matter of Sharon GG. v Duane HH.,* 95 AD2d 466, 468, *affd* 63 NY2d 859; *Matter of Boyles v Boyles, supra,* at 98; *Matter of Christopher S. v Ann Marie S., supra,* at 831-832).

However, establishing a prima facie basis for entitlement to the application of the doctrine of equitable estoppel is not the end of the analysis insofar as the issues of custody and visitation are concerned. Instead, the court must make a further determination whether the doctrine should or should not be applied in the best interests of the child (*see, Matter of Sharon GG. v Duane HH., supra,* at 469; *Matter of Boyles v Boyles, supra,* at 99; *Matter of Christopher S. v Ann Marie S., supra,* at 829). Here, however, by finding that the husband lacked standing, the court precluded any testimony regarding the best interests of Kelly. Since the issue of the best interests of the child has not been addressed, the order is reversed, that branch

of the motion which was for a determination that the defendant lacked standing to seek custody of, or visitation with, the subject child is denied, and the matter is remitted to the Supreme Court, Nassau County, for an additional hearing.

THOMPSON, J. P., GOLDSTEIN and LUCIANO, JJ., concur.

Ordered that the order is reversed, with costs, that branch of the plaintiff's motion which was for a determination that the defendant lacked standing to seek custody of, or visitation with, the subject child is denied, and the matter is remitted to the Supreme Court for a further hearing in accordance herewith.