OPINION OF THE COURT
Joan O. Cooney, J.
Petitioner, J. C., filed a petition seeking visitation with the *936 minor children, B. P. T.-C. (date of birth Mar. 13, 1996) and J. M. T.-C. (date of birth Feb. 20, 1998), who are the biological children of her former live-in partner. Respondent mother moved to dismiss the petition upon the ground that petitioner lacked standing to petition the court for visitation. A Law Guardian was appointed to represent the interests of the subject children. Both the Law Guardian and petitioner opposed respondent’s motion.
Petitioner alleges that the parties and the two children at issue were a “typical” family in most respects. Prior to the birth of the children, the parties, in preparing for their future together and for the future of the children they were planning to have, executed reciprocal wills, reciprocal designations of conservator, and reciprocal powers of attorney. Both parties participated in planning for respondent’s pregnancies and for the birth of the children, who were born to respondent, C. T., by means of artificial insemination. The parties chose names for the children and gave the children both of their surnames. Together they decided that petitioner would support the family as the sole wage earner, while respondent stayed at home as a caretaker for the children.
Petitioner further alleges that from the birth of each child and through their formative years, respondent fostered a mother-child relationship between her children and petitioner. According to the children’s Law Guardian, the children refer to petitioner as “Moma.” The parties and the children lived together as a family, and represented themselves to the world as a family. Both parties considered themselves, and were considered by others, to be the “mothers” of the children. The children also considered both parties to be their mothers. This arrangement continued until the parties separated. Initially, after the separation, respondent permitted petitioner to visit with the children but then she terminated the visitation. This proceeding ensued.
Respondent does not deny the facts asserted by petitioner with respect to their relationship or with respect to petitioner’s actual, as opposed to legal, relationship to the children. However, she argues that because the parties were in a same sex relationship, the children’s relationship with petitioner is not protected by statute (see, Family Ct Act § 651; Domestic Relations Law §§ 240, 71-72). Respondent asserts, in reliance upon the Court of Appeals decision in Matter of Alison D. v Virginia M. (77 NY2d 651, 655-657), that as the biological *937 mother of the children, it is her right to determine with whom her children associate, and that petitioner, who is neither a biological nor an adoptive parent, has no standing to assert any rights with respect to the subject children.
In Matter of Alison D. v Virginia M. (supra, at 655-657), the Court of Appeals held that same sex partners who are “biological strangers” to the children are not “parents” for purposes of New York’s Domestic Relations Law, and, thus, have no standing under Domestic Relations Law § 70 to petition for visitation when the children at issue are properly within the custody of a fit legal or biological parent. In reaching this conclusion, the Court reaffirmed the traditional New York rule that visitation is a modified form of custody, and that, as between a parent and a third person, parental custody of a child may not be displaced absent grievous cause or necessity (see also, Matter of Ronald FF. v Cindy GG., 70 NY2d 141, 144). The Court of Appeals also affirmed the Appellate Division’s ruling in Matter of Alison D. v Virginia M. (155 AD2d 11, 14-15) that New York’s exceptional or extraordinary circumstances doctrine does not apply to such circumstances.
Petitioner, however, does not rely on the doctrine of exceptional circumstance. Petitioner relies exclusively on the doctrine of equitable estoppel, citing, in support, the decision of the Appellate Division, Second Department, in Jean Maby H. v Joseph H. (246 AD2d 282). In Jean Maby H. v Joseph H. (supra), the petitioner mother started living with the respondent, nonbiological parent, shortly before the birth of her child. The parties subsequently married, and the defendant acted as the child’s father until the parties divorced. The child referred to the defendant as “Daddy,” and considered him to be her father. The trial court, relying on Matter of Alison D. v Virginia M. (supra), determined that the defendant had no standing to seek custody and visitation. The Appellate Division, Second Department, reversed, finding that the Court of Appeals decisions in Matter of Alison D. v Virginia M. (supra), and in Matter of Ronald FF. v Cindy GG. (70 NY2d 141, supra), did not create a blanket rule to be applied in all cases involving unrelated persons seeking to establish custody or visitation in the face of a fit biological parent, without regard to the best interests of the child. The Court, in relying on Matter of Baby Boy C. (84 NY2d 91), stated (at 287) that the “ £[C]ourts [of this State] [are] more inclined to impose equitable estoppel to protect the status interests of a child in an already recognized and operative parent-child relationship.’ ”
*938 As noted by Judge Kaye in her dissenting opinion in Matter of Alison D. v Virginia M. (supra), there is a distinction between visitation and custody, which makes it inappropriate to apply rigid or bright line rules developed within the context of custody to matters of visitation (77 NY2d, at 660-661; see, Matter of Ronald FF. v Cindy GG. supra; Weiss v Weiss, 52 NY2d 170, 175). Indeed, there are cases in this State in which the biological parent has been equitably estopped from denying parental rights to persons who are neither biological nor adoptive parents and who would thus not qualify for standing as a “parent” under the Domestic Relations Law (see, e.g., Matter of Richard W. v Roberta Y., 240 AD2d 812; Matter of Barbara A. M. v Gerard J. M., 178 AD2d 412).
The rationale for applying equitable estoppel in these cases generally has been to protect the status and corresponding rights of children who were led to believe that they were the children of both parties. Jean Maby H. v Joseph H. (supra), while falling within the parameters of a traditional application of the doctrine, also demonstrates that the biological parental prerogative, as articulated in Matter of Ronald FF. v Cindy GG. (supra), is not insurmountable, and that Matter of Alison D. v Virginia M. (supra) is not to be applied inflexibly to all instances involving nonadoptive and nonbiological parents who have, with the encouragement of the biological parent, maintained a significant parental role in the children’s lives.
As has often been stated, visitation is not only the right of a noncustodial parent, it is also a right of the children (Weiss v Weiss, supra; Matter of Nancy M. v Brian M., 227 AD2d 404). The United States Supreme Court has recognized that children have a strong interest in maintaining a connection to adults who love and provide for them, and with whom they have developed emotional and familial bonds as a result of shared daily life (see, Lehr v Robertson, 463 US 248, 261; Smith v Organization of Foster Families for Equality & Reform, 431 US 816; accord, see, Matter of Alison D. v. Virginia M., supra [Kaye, J., dissenting]).
More and more children are developing parental relationships with persons falling outside of traditionally recognized families, and cases involving same sex partnerships are coming into the courts with increasing frequency across the country (see, V.C. v M.J.B., 163 NJ 200, 748 A2d 539 [2000]; Carter v Brodrick, 644 P2d 850, 855 [Alaska 1982]; Matter of C.C.R.S., 892 P2d 246, 247 [Colo 1995]; Simpson v Simpson, 586 SW2d 33, 35 [Ky 1979]; E.N.O. v L.M.M., 429 Mass 824, 832-834, 711 *939 NE2d 886, 893-894 [1999]; State ex rel J.W.F., 799 P2d 710, 714 [Utah 1990]; In re H.S.H.-K., 193 Wis 2d 649, 658, 533 NW2d 419, 421 [1995]; cf., compare, Curiale v Reagan, 222 Cal App 3d 1597, 272 Cal Rptr 520 [1990]; Matter of C.B.L., 309 Ill App 3d 888, 723 NE2d 316 [1999]; Kazmierazak v Query, 736 So 2d 106 [Fla 1999]; Liston v Pyles, 1997 WL 467327, 1997 Ohio App LEXIS 3627 [Ohio Ct App, 10th Dist, Aug. 12, 1997]; In re Thompson, 11 SW3d 913 [Tenn 1999]; Titchenal v Dexter, 166 Vt 373, 693 A2d 682 [1997]).
Some States have amended their custody and visitation statutes to provide a framework from which to assess custody and visitation issues that arise outside of the context of either adoptive or biological parents (see, e.g., Ariz Rev Stat Annot § 25-415 [G] [1]; Minn Stat Annot § 257.022 [2b]; Tex Fam Code Annot § 102.003 [a] [9]; Nev Stat § 125C.050 [3]). Other State statutes contain language that is broad enough to encompass such situations, which allows the courts in those States to consider circumstances which indicate a need to expand the definition of parent in order to accommodate the best interests of the children (see, e.g., NJ Stat Annot § 9:2-13 [f]).
As noted by Judge Kaye in her dissenting opinion in Matter of Alison D. v Virginia M. (supra), New York’s Domestic Relations Law, which is incorporated by reference under section 651 (b) of the Family Court Act (see, Matter of Lynda A.H. v Diane T.O., 243 AD2d 24), does not define the term “parent” (supra, at 659). While the majority of the Court of Appeals in Matter of Alison D. v Virginia M. rejected the petitioner’s assertion that she was a “parent by estoppel” within the meaning of Domestic Relations Law § 70, the issue of whether a biological parent may be equitably estopped from denying a same sex partner visitation, due to his or her own actions in creating, nurturing and encouraging a parent-child relationship, was not directly addressed. Accordingly, this court determines that it is not foreclosed from considering whether the equitable estoppel doctrine should be applied to this matter.
In this matter, as in Jean Maby H. (246 AD2d 282, supra), in which respondent did not merely acquiesce but took affirmative actions to encourage a parent-child relationship between petitioner and the children, it would be unconscionable to allow the respondent to unilaterally terminate that relationship without the opportunity for a court to make a determination as to what is in the best interests of the children.
*940 The court must determine whether there is an “operative” parent-child relationship which can be equitably protected. Recently, the Supreme Court of New Jersey applied a test articulated by the Supreme Court of Wisconsin in In re H.S.H.-K. (193 Wis 2d 649, 658, 533 NW 419, 421 [1995], supra) to determine when a demonstration of “de facto” or psychological parenthood would be sufficient to trigger standing to allow lesbian partners to obtain visitation (V.C. v M.J.B., 163 NJ 200, 748 A2d 539 [2000], supra). The New Jersey Supreme Court reasoned that psychological parent cases are a subcategory of “exceptional circumstance” cases, and although use of the “psychological parent” argument within the context of the exceptional or extraordinary circumstances doctrine has been rejected by the courts in New York (see, Matter of Lynda A.H. v Diane T.O., supra; Matter of Burghdurf v Rogers, 233 AD2d 713), the elements of the test as articulated by the New Jersey and Minnesota Supreme Courts actually incorporate many of the factors which New York courts traditionally have considered in determining whether or not to apply the doctrine of equitable estoppel. '
Under this test, if a nonbiological or nonadoptive person, who is not otherwise granted statutory standing, seeks visitation with a child or children with whom he or she alleges a parental relationship, they must demonstrate: (1) that the biological or adoptive parent consented to, and fostered, the petitioner’s formation and establishment of a parent-like relationship with the child; (2) that the petitioner and the child lived together in the same household; (3) that the petitioner assumed the obligations of parenthood by undertaking significant responsibility for the child’s care, education and development, including contributions to the child’s support, monetary or otherwise, without the expectation of financial compensation; and (4) that the petitioner has been in a parental role for a length of time sufficient to have established with the child a bonded, dependent relationship which is parental in nature.
The focus qf the inquiry with respect to the first prong of the test is the intent of the legal parent during the formation and pendency of the third-party parent-child relationship, and requires a finding that the biological or adoptive parent’s own actions led to the creation of the parental bond between the nonbiological or nonadoptive party and the child. Equally important is the petitioning party’s assumption of the full panoply of parental obligations, as well as a demonstration that the child is actually psychologically bonded or dependent *941 upon that person as a “parent.” Without these elements, there would be no basis for invoking the doctrine of equitable estoppel, even within the traditional framework (see, e.g., Matter of Delcore v Mansi, 262 AD2d 559, 559-560).
The use of such a test is an appropriate way to balance the competing interests of the parties, as well as the interests of the children in maintaining contact with persons who are, at least to them, parents. Application of the equitable estoppel argument to such cases, however, requires the use of a bifurcated analysis, similar to that employed within the context of grandparent visitation under Domestic Relations Law § 72 (see, e.g., Matter of Richard YY. v Sue ZZ., 249 AD2d 885).
In order to establish standing, the petitioner must demonstrate an actual and substantial parent-child relationship under the test articulated above. If the petitioner establishes the existence of such a relationship and there is a basis for equitable intervention, then the court must determine whether visitation with the petitioner is in the best interests of the children.
In this matter, the Law Guardian alleges in a brief submitted in support of the petition that the children are bonded to petitioner as a parent. However, the court cannot satisfactorily determine whether petitioner should be allowed to invoke the equitable estoppel doctrine based solely upon the unsworn allegations of the Law Guardian or the affidavits submitted by the parties on the issue of standing.
Accordingly, respondent’s motion to dismiss the petition is denied and the matter is scheduled for a hearing, to determine whether the petitioner has a real and substantial parental relationship with the children at issue.