■ In the Matter of Frank Multari, Jr., Appellant, v Renee B. Sorrell et al., Respondents. [731 NYS2d 238] —Carpinello, J. Appeal from an order of the Family Court of Saratoga County (Hall, J.), entered April 3, 2000, which dismissed petitioner's application, in a proceeding pursuant to Family Court Act article 6, for visitation with a nonbiological child.

Petitioner is former boyfriend of respondent Renee B. Sorrell (hereinafter respondent). Petitioner and respondent never married but lived together for six years during which time

petitioner formed a close and loving relationship with respondent's son, who was approximately 18 months old when petitioner and respondent met and eight years old when their relationship ended. There is no dispute that petitioner is not the child's biological father and that, although contemplated over the years, no formal action was ever taken by petitioner and/or respondent to have petitioner adopt him. The child had regular unsupervised contact as an infant with respondent John O'Keefe, his biological father, which eventually became supervised and then stopped altogether when the child was about two years old. His biological father has recently resurfaced, and visitation between the two has been reestablished.

Following their breakup in August 1998, respondent permitted petitioner to have contact with the child to ease the transition of their separation for the child. These visits gradually decreased in frequency and duration and terminated altogether in May 1999. Petitioner thereafter commenced this proceeding pursuant to Family Court Act article 6 seeking visitation, alleging in his petition that same would be in the best interest of the child. Following respondent's motion to dismiss on the ground that petitioner lacked standing to seek this relief, petitioner claimed that he was "requesting the Court to intervene in this situation based upon the doctrine of equitable estoppel." Following a hearing at which Family Court considered evidence on the issue of whether petitioner could establish facts sufficient to invoke this doctrine, the court found that he failed in this burden and accordingly dismissed the petition. Petitioner appeals.

Although we conclude that Family Court correctly determined that petitioner failed to make out a prima facie case of equitable estoppel against respondent,[1] we find that affirmance is mandated on more fundamental grounds, namely, that petitioner simply lacks standing to seek visitation and cannot get around this insurmountable legal hurdle by attempting to offensively invoke the doctrine of equitable estoppel. In our

---

1. "[A]n estoppel 'is imposed by law in the interest of fairness to prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought' " (*Verra v Bowman-Verra*, 266 AD2d 682, 683, quoting *Nassau Trust Co. v Montrose Concrete Prods. Corp.*, 56 NY2d 175, 184). Simply stated, the record reveals that the fatherly relationship between petitioner and respondent's child developed naturally over time, in the absence of misleading words or conduct on respondent's part upon which petitioner could, in turn, detrimentally rely.

view, the facts of this case are governed squarely by the Court of Appeals' decisions in *Matter of Ronald FF. v Cindy GG.* (70 NY2d 141) and *Matter of Alison D. v Virginia M.* (77 NY2d 651; *see also, Matter of Delcore v Mansi,* 262 AD2d 559, 560 ["Family Court did not err in denying visitation," citing *Matter of Alison D. v Virginia M., supra*]; *Matter of Lynda A. H. v Diane T. O.,* 243 AD2d 24, *lv denied* 92 NY2d 811 [nonbiological, nonadoptive parent lacks standing to seek visitation of child properly in custody of biological mother]; *Matter of Bessette v Saratoga County Commr. of Social Servs.,* 209 AD2d 838 [former foster parents lack standing to seek visitation with former foster children]; *Matter of David M. v Lisa M.,* 207 AD2d 623 [greatgrandparent does not have standing to seek visitation]; *Matter of John Andrew B. v Dianna Marie McC.,* 149 Misc 2d 249, 254 ["The Court of Appeals has unequivocally held that it is without authority to grant visitation to the mother's former paramour who is not the father of the child"]).

As firmly established in *Matter of Ronald FF. v Cindy GG.* (*supra*), the rights of a custodial parent "include the right to determine who may or may not associate with [that parent's] child" (*id.,* at 142), and the State may not interfere with this fundamental right absent a showing of "some compelling State purpose which furthers the child's best interest" (*id.,* at 145). There is no dispute in this case that respondent is indeed a fit parent and the proper custodian for the child. This being so, *Matter of Alison D. v Virginia M.* (*supra*) further establishes that, no matter how close and loving petitioner's relationship is with respondent's child, petitioner, as a biological stranger to that child, lacks standing to seek visitation. Notably, in *Matter of Alison D. v Virginia M.* (*supra*), the Court of Appeals specifically rejected the petitioner's claim that her status as a parent " 'by estoppel' " was sufficient to confer standing to seek visitation (*id.,* at 656).

Similarly, the Second Department in *Matter of Alison D. v Virginia M.* (155 AD2d 11, 16, *affd* 77 NY2d 651) held that "[t]he argument raised by petitioner relating to equitable estoppel is without merit." A thorough review of the briefs in that case to both the Court of Appeals and the Second Department reveals that the petitioner specifically argued in both Courts for the application of the doctrine of equitable estoppel to prohibit the respondent from denying her visitation, an argument which both Courts rejected. Of note, the grounds advanced for application of the doctrine in that case were nearly identical to those now advanced by petitioner in this case, namely, that respondent encouraged the emotional and psychological bond be-

tween petitioner and the child over a six-year period, that respondent held petitioner out to others as the child's parent and that termination of the relationship would result in the loss of significant parental and extended family relationships for the child.[2] Also of note, Alison D. explicitly argued to the Court of Appeals that "[a]t the very least, [she had] raised a factual question regarding whether Virginia M. should be estopped from denying visitation" (an argument which the Court obviously rejected) and requested "a full hearing on her claim of equitable estoppel" (which the Court obviously denied). Thus, no matter how terse its language on the issue of equitable estoppel, and no matter how much we might be inclined to agree with our concurring Justice philosophically, we are bound to adhere to the Court of Appeals' decision in *Matter of Alison D. v Virginia M.* (77 NY2d 651, *supra*), which stands for the proposition that a nonbiological parent cannot invoke equitable estoppel to get around his or her lack of standing to assert visitation. Any change in the state of the law in this regard is for the Legislature or the Court of Appeals.

While the doctrine of equitable estoppel has long been available as a defense in paternity matters, thereby allowing courts to treat a nonbiological father as a parent even though blood test evidence may prove otherwise (*see, e.g., Matter of Kristen D. v Stephen D.*, 280 AD2d 717; *Matter of Lorie F. v Raymond F.*, 239 AD2d 659; *Mancinelli v Mancinelli*, 203 AD2d 634), paternity is not at issue in this case. Nor is there any need, typically present in such proceedings, "to protect the status of a child in an already recognized and operative parent-child relationship" (*Matter of Lorie F. v Raymond F., supra*, at 660; *cf., Robin I. v Ronald J.*, 282 AD2d 837; *Matter of Kristen D. v Stephen D., supra*; *Matter of Peter BB. v Robin CC.*, 256 AD2d 889). Here, both petitioner and respondent obviously knew that petitioner was not the child's biological father, the parties' family and friends knew that petitioner was not the child's biological father and *the child* had been told that petitioner was not his biological father before the parties separated. Petitioner did not adopt the child, the parties never married nor did they have any children together. Thus, the factors usually present in those paternity cases where the doctrine is most often applied are simply not present here. While we acknowledge that some courts have ruled that the doctrine of equitable estoppel may be applied to custody and visitation

**2.** The factual circumstances in *Matter of Alison D. v Virginia M.* (*supra*) were significantly more compelling for application of equitable estoppel than the facts of the case at bar.

disputes in certain circumstances, particularly circumstances far more compelling than those in the instant matter (*see, e.g., Matter of Gilbert A. v Laura A.*, 261 AD2d 886; *Jean Maby H. v Joseph H.*, 246 AD2d 282; *Matter of J. C. v C. T.*, 184 Misc 2d 935; *Matter of Christopher S. v Ann Marie S.*, 173 Misc 2d 824), we decline to expand the use of this doctrine by applying it to the facts of this case.[3]

Mercure, J. P., Crew III and Rose, JJ., concur.

Peters, J. (concurring). I agree that petitioner failed to make out a prima facie case of equitable estoppel. However, because I believe that the adage "blood is thicker than water" is not always germane to parenting,[1] I cannot join in the majority's narrow interpretation of the Court of Appeals' decisions in *Matter of Ronald FF. v Cindy GG.* (70 NY2d 141) and *Matter of Alison D. v Virginia M.* (77 NY2d 651) so as to foreclose the assertion of the doctrine of equitable estoppel by a nonbiological or nonadoptive parent who seeks to establish standing to claim that visitation is in the best interest of a child.

In *Matter of Ronald FF. v Cindy GG.* (*supra*), the Court of Appeals declared that the narrow exception articulated in *Matter of Bennett v Jeffreys* (40 NY2d 543), which permits a nonbiological parent to present "extraordinary circumstances" to support a claim for custody against a biological or adoptive parent, cannot be used by a "biological stranger where the child, born out of wedlock, is properly in the custody of [a parent]" (*Matter of Ronald FF. v Cindy GG.*, *supra*, at 142). Notably, the analysis did not focus upon the application of the doctrine of equitable estoppel.

In *Matter of Boyles v Boyles* (95 AD2d 95), this Court recognized the distinction between these theories (*id.*, at 99-100) when we concluded "for public policy reasons, [that since] respondent [mother] * * * held her child out as the legitimate son of her husband for a substantial period of time, [she] should be precluded from thereafter bastardizing the child for the sole

---

**3.** Our decision today is consistent with prior cases in this Court holding that it is against public policy to stipulate away a child's right to be reared by his or her biological parent and that any stipulation elevating a nonbiological parent to the status of parent in a custody or visitation matter is against that public policy and does not confer standing upon a person unrelated by blood to the child (*see, e.g., Matter of Cindy P. v Danny P.*, 206 AD2d 615, *lv denied* 84 NY2d 808; *Matter of Canabush v Wancewicz*, 193 AD2d 260).

**1.** While "parent" is defined, *inter alia*, as "[o]ne who begets, gives birth to, or nurtures and raises a child," "parenting" is "[t]he rearing of a child or children, especially the care, love, and guidance given by a parent" (American Heritage Dictionary of the English Language 1315 [3d ed 1996]).

purpose of furthering her own self-interest in obtaining exclusive custody" (*id.*, at 98). The application of the doctrine of equitable estoppel precluded the Court from treating the dispute as one between a parent and a nonparent (*id.*, at 99-100). Rather, it centered on the paramount concern of what was in the best interest of the child—an issue "separate and distinct from the extraordinary circumstance issue" (*id.*, at 99; *see, Hill v Hill*, 20 AD2d 923).

Historically, in the absence of statutory authority to support a result sought, we have turned first to the common law (*see, Matter of David M. v Lisa M.*, 207 AD2d 623, 624) and then, if necessary, to the laws of equity—"the object of which is to render the administration of justice more complete, by affording relief where the courts of law are incompetent to give it, or to give it with effect" (Black's Law Dictionary 540 [6th ed 1990]). Within this collateral system of jurisprudence is the doctrine of equitable estoppel: "[T]he doctrine of equitable estoppel may successfully be invoked, in the interest of fairness, to prevent the enforcement of rights which would ultimately work fraud or injustice upon the person against whom enforcement is sought * * *. An estoppel defense may also be invoked where the failure to promptly assert a right has given rise to circumstances rendering it inequitable to permit the exercise of the right after a lapse of time * * *. Because of the same qualitative considerations which support the invocation of estoppel in other areas of law, the courts, in more recent years, have recognized the availability of this doctrine as a viable defense in various forms of proceedings involving domestic disputes" (*Matter of Ettore I. v Angela D.*, 127 AD2d 6, 12 [citations omitted]). Equitable estoppel has been invoked to "zealously safeguard the welfare, stability and best interests of the child by rejecting untimely challenges affecting his or her legitimacy" (*id.*, at 13), wholly recognizing "the extreme difficulty, if not impossibility, of substituting a stranger for someone who, as a consequence of years of concern and love for a child, has become the 'psychological' parent" (*id.*, at 15 [internal quotation marks omitted]; *see, Matter of Kristen D. v Stephen D.*, 280 AD2d 717; *Matter of Lorie F. v Raymond F.*, 239 AD2d 659; *Matter of James BB. v Debora AA.*, 202 AD2d 852). It has also been employed successfully against a biological parent by one who would not have otherwise qualified for standing as a "parent" under the Domestic Relations Law (*see, Matter of J. C. v C. T.*, 184 Misc 2d 935). The basis for the invocation of the doctrine "has been to protect the status and corresponding rights of children who were led to believe that they were the children of both parties * * * [as] visitation is

not only the right of a noncustodial parent, it is also a right of the children" (*id.*, at 938).[2]

It is against this background that we address *Matter of Alison D. v Virginia M.* (77 NY2d 651, *supra*) wherein the Court of Appeals ruled that a nonbiological parent could not petition for visitation with a child absent a finding of unfitness on the part of the biological custodial parent since she failed to fall within the definition of "parent" as contemplated by Domestic Relations Law § 70. By declining to squarely address the doctrine of equitable estoppel, I believe that the application thereof remains viable to appropriately advance the best interest of a child.

The precept that the laws of equity should be seized upon "to prevent the enforcement of rights which would ultimately work fraud or injustice" (*Matter of Ettore I. v Angela D.*, 127 AD2d 6, 12, *supra*) is compelling in these circumstances. "[N]o logical reason [exists] for allowing the doctrine of equitable estoppel to be used to advance the best interests of the child in a paternity case and to disallow application of that doctrine in the context of a custody [or visitation] case, not involving issues of paternity * * * [since] the fundamental rights sought to be protected and the reasons advanced for protecting those rights are identical—the best interests of the child" (*Matter of Christopher S. v Ann Marie S.*, 173 Misc 2d 824, 829; *see also*, *Matter of Delcore v Mansi*, 262 AD2d 559; *Matter of Gilbert A. v Laura A.*, 261 AD2d 886; *Jean Maby H. v Joseph H.*, 246 AD2d 282; *Matter of J. C. v C. T.*, 184 Misc 2d 935, *supra*; Felder, *Custody and Visitation: Who Has Standing?*, NYLJ, Aug. 13, 2001, at 3, col 1, at 4, col 5; Samuelson, *Is the Doctrine of Equitable Estoppel Viable in a Child Custody Dispute?*, 29 Fam L Rev 1 [1997]).

Simply put, if a biological mother can assert the parental bond between a nonbiological or nonadoptive father and her child as a shield against prosecution of a paternity proceeding by a putative biological father, such nonbiological or nonadoptive father should have the ability to use the parental bond as a sword to establish standing in a visitation proceeding to ensure that the best interest of a child is secured. To effectively establish standing, such nonbiological or nonadoptive parent is

---

**2.** Notably, in the recent decision of *Webster v Ryan* (189 Misc 2d 86), it was found that there was a constitutionally guaranteed right of the child to maintain contact with a person with whom the child has developed a parent-like relationship. Such right must be balanced with the unquestionable fundamental right of the biological parent to raise the child without undue State interference.

burdened with a compelling task—he or she must show, *inter alia*, that the actions or encouragement of the biological or adoptive parent caused the creation of the parental bond between the petitioner and the child in the first instance (*see, Matter of Boyles v Boyles*, 95 AD2d 95, *supra*); that he or she has assumed "the full panoply of parental obligations * * * [; and] that the child is [now] actually psychologically bonded or dependent upon that person as a 'parent' " (*Matter of J. C. v C. T.*, 184 Misc 2d 935, 940-941, *supra*).

If in custody and visitation disputes, common sense, reason and an overriding concern for the welfare of a child are to prevail over narrow selfish proclamations of biological primacy, the assertion of equitable estoppel by a nonbiological or nonadoptive parent must be given credence by the courts. Therefore, while I agree with the majority's determination that petitioner herein lacked standing, I cannot concur with their narrow reasoning which shrinks the prerequisite of standing to a biological construct.

Ordered that the order is affirmed, without costs.