[930 NE2d 214, 904 NYS2d 293]

In the Matter of JUANITA A., Respondent, v KENNETH MARK N., Appellant.

Argued March 25, 2010; decided May 4, 2010

**POINTS OF COUNSEL**

*Davison Law Office PLLC,* Canandaigua (*Mary P. Davison* of counsel), for appellant. I. The intermediate appellate court erred in affirming the judgment of the Family Court which adjudicated appellant to be the father and imposed on him a duty of support. (*Matter of Shondel J. v Mark D.,* 7 NY3d 320; *Matter of John Robert P. v Vito C.,* 23 AD3d 659; *Matter of Juan A. v Rosemarie N.,* 55 AD3d 827; *Matter of Antonio H. v Angelic W.,* 51 AD3d 1022; *Matter of Bruce W.L. v Carol A.P.,* 46 AD3d 1471, 10 NY3d 707; *Matter of Isaiah A. C. v Faith T.,* 43 AD3d 1048; *Matter of Darlene L.-B. v Claudio B.,* 27 AD3d 564; *Matter of Sharon GG. v Duane HH.,* 95 AD2d 466, 63 NY2d 859; *Matter of Boyles v Boyles,* 95 AD2d 95; *Matter of Charles v Charles,* 296 AD2d 547.) II. Appellant was denied his right to due process

and his right to counsel because the Family Court ordered genetic marker testing without advising him that he had a right to assignment of counsel and a right to an adjournment to confer with counsel. Appellant was further denied his right to effective assistance of counsel, once appointed. The intermediate appellate court erred in finding that trial counsel was not ineffective and that appellant waived review of the magistrate's failure to properly advise him of his rights. (*Matter of Jung [State Commn. on Jud. Conduct]*, 11 NY3d 365; *Matter of Ella B.*, 30 NY2d 352; *Matter of Wilson v Bennett*, 282 AD2d 933; *Matter of Brown v Wood*, 38 AD3d 769; *Matter of Machado v Del Villar*, 299 AD2d 361; *Matter of Gaudette v Gaudette*, 263 AD2d 620; *Matter of Hassig v Hassig*, 34 AD3d 1089; *Matter of Delafrange v Delafrange*, 24 AD3d 1044; *Matter of Darryl B.W. v Sharon M.W.*, 49 AD3d 1246; *Matter of Fralix v Thornock*, 9 AD3d 890.)

*Susan Gray Jones*, Canandaigua, *Law Guardian*. I. The intermediate appellate court correctly affirmed that lower court's adjudication of paternity and declined to apply the doctrine of equitable estoppel. (*Matter of Shondel J. v Mark D.*, 7 NY3d 320; *Matter of Ruby M.M. v Moses K.*, 18 AD3d 471; *Matter of Dowed v Munna*, 306 AD2d 278; *Ocasio v Ocasio*, 276 AD2d 680; *Brian B. v Dionne B.*, 267 AD2d 188; *Matter of Saragh Ann K. v Armando Charles C.*, 67 AD3d 537; *Matter of John Robert P. v Vito C.*, 23 AD3d 659; *Purificati v Paricos*, 154 AD2d 360; *Howard S. v Lillian S.*, 62 AD3d 187.) II. Appellant was provided effective assistance of counsel. (*Matter of Laura LL. v Robert LL.*, 186 Misc 2d 642; *Strickland v Washington*, 466 US 668; *Matter of Shangraw v Shangraw*, 61 AD3d 1302; *Matter of Chaquill R.*, 55 AD3d 975; *Matter of St. Lawrence County Support Collection Unit v Cook*, 57 AD3d 1258; *Matter of Yette v Yette*, 39 AD3d 952, 9 NY3d 802; *Matter of Kilmartin v Kilmartin*, 44 AD3d 1099; *Matter of Bryan W.*, 299 AD2d 929; *Matter of Nagi T. v Magdia T.*, 48 AD3d 1061; *Marivel G. v Marcus D.*, 6 Misc 3d 1030[A], 2005 NY Slip Op 50230[U].)

### OPINION OF THE COURT

PIGOTT, J.

The issue before this Court is whether a biological father may assert an equitable estoppel defense in paternity and child support proceedings. Under the circumstances of this case, where another father figure is present in the child's life, we hold that he may assert such a claim.

On June 25, 1994, the child, A., was born. At the time, mother was unmarried, but living with Raymond S., who was listed as A.'s father on her birth certificate. Mother and Raymond had a previous child together and, after the birth of A., had another child. When A. was seven years old, during a family dispute, she became aware that Raymond may not be her biological father. At that time, mother called Kenneth at his home in Florida and had him speak with A. The conversation lasted less than 10 minutes, during which time A. asked questions concerning his physical characteristics. Kenneth's attempt to speak with A. a second time was rebuffed by Raymond, who warned Kenneth not to speak to A. again. Kenneth has had no further contact with A.

In 2006, when A. was approximately 12 years old, mother filed the instant petition against Kenneth, seeking an order of filiation and child support. Kenneth appeared before Family Court for the first time by way of telephone. The Support Magistrate advised Kenneth, among other things, that he had the right to admit or deny that he was the father of A. However, he did not advise Kenneth that he had the right to assignment of counsel, or inquire whether he wished to consult with counsel prior to proceeding. Kenneth agreed to the ordered genetic marker testing, which indicated a 99.99% probability that Kenneth is indeed A.'s biological father.

At a hearing in January 2007, Kenneth, having now been assigned counsel, appeared once again via telephone, but protested that he had yet to speak with the lawyer assigned to him. Counsel admitted that he had not spoken to his client, and that the "file fell through the cracks for me." Despite Kenneth's protest, the Support Magistrate proceeded with the hearing. When the issue of equitable estoppel was raised by Kenneth, the Magistrate, lacking the authority to hear that issue, transferred the case to a judge of the Family Court. That court, determining the issue on motion papers and oral argument, held that Kenneth was the father of A. and entered an order of filiation.

The Appellate Division affirmed, holding that the doctrine of equitable estoppel is applicable in paternity proceedings only where it is invoked to further the best interests of the child, and "generally is not available to a party seeking to disavow the allegation of parenthood for the purpose of avoiding child support" (63 AD3d 1662, 1663 [4th Dept 2009]). The court also rejected Kenneth's contention that he was denied effective as-

sistance of counsel (*id.*). We granted leave to appeal (13 NY3d 830 [2009]) and now reverse.

In *Matter of Shondel J. v Mark D.* (7 NY3d 320 [2006]), we set forth the law applicable to equitable estoppel in paternity and child support proceedings. We noted that the

> "purpose of equitable estoppel is to preclude a person from asserting a right after having led another to form the reasonable belief that the right would not be asserted, and loss or prejudice to the other would result if the right were asserted. The law imposes the doctrine as a matter of fairness. Its purpose is to prevent someone from enforcing rights that would work injustice on the person against whom enforcement is sought and who, while justifiably relying on the opposing party's actions, has been misled into a detrimental change of position" (*id.* at 326).

We concluded that the "paramount" concern in such cases "has been and continues to be the best interests of the child" (*id.*).

Equitable estoppel has been used, as it was in *Shondel J.*, to prevent a man from avoiding child support by claiming that he is not the child's biological father (*id.* at 328). In such a case, the man has represented himself to be the child's father and the child's best interests are served by a declaration of fatherhood. The doctrine in this way protects "the status interests of a child in an already recognized and operative parent-child relationship" (*Matter of Baby Boy C.*, 84 NY2d 91, 102 n [1994]). Here, Kenneth seeks to invoke the doctrine against mother, who led Kenneth to form the reasonable belief that he was not a father and that Raymond is A.'s father. He argues that it is not in A.'s best interest to have her current, child-father relationship with Raymond interrupted.

At the time the instant petition was brought, A. was 12 years old and had lived in an intact family with Raymond and her mother. His name appears on her birth certificate and he is the biological father of her older and younger siblings. For most of A.'s life, she referred to Raymond as father. Thus, Kenneth appropriately raises an issue as to whether it is in A.'s best interest to have someone besides Raymond declared her father this late in her childhood. As a result, we conclude it is proper for him to assert a claim of estoppel to, among other things, protect the status of that parent-child relationship.

We disagree with the Law Guardian's position that a person who has already been determined to be a child's biological father cannot raise an equitable estoppel argument.* Indeed, the doctrine has been used to prevent a biological father from asserting paternity rights when it would be detrimental to the child's interests to disrupt the child's close relationship with another father figure (*see e.g. Matter of Fidel A. v Sharon N.*, 71 AD3d 437 [1st Dept 2010]; *Matter of Richard W. v Roberta Y.*, 240 AD2d 812 [3d Dept 1997]; *Purificati v Paricos*, 154 AD2d 360 [2d Dept 1989]). The same best-interests considerations that justify estopping a biological father from asserting his paternity may justify preventing a mother from asserting it. Indeed, whether it is being used in the offensive posture to enforce rights or the defensive posture to prevent rights from being enforced, equitable estoppel is only to be used to protect the best interests of the child. Therefore, we hold that the doctrine of equitable estoppel may be used by a purported biological father to prevent a child's mother from asserting biological paternity—when the mother has acquiesced in the development of a close relationship between the child and another father figure, and it would be detrimental to the child's interests to disrupt that relationship.

We conclude that a hearing is needed in this case to decide the merits of Kenneth's claim. At that hearing, Raymond must be joined as a necessary party, so that Family Court may consider the nature of his relationship with the child and make a proper determination of A.'s best interests. Consequently, we remit the matter to Family Court for such a hearing and determination.

In view of the foregoing, we need not address Kenneth's remaining issues. However, both the Support Magistrate's failure to advise Kenneth of his right to counsel before genetic testing was done and counsel's failure to consult with Kenneth before the January 2007 hearing are troubling events, which should not have occurred.

Accordingly, the order of the Appellate Division should be reversed, with costs, and the matter remitted to Family Court for further proceedings in accordance with this opinion.

---

* We note that Family Court should have addressed the equitable estoppel issue prior to directing that Kenneth undergo genetic marker tests (*see Shondel J.*, 7 NY3d at 330). The fact that testing was conducted, however, does not bar the court from thereafter deciding the estoppel issue, as *Shondel J.* itself held.

Chief Judge LIPPMAN and Judges CIPARICK, GRAFFEO, READ, SMITH and JONES concur.

Order reversed, etc.