■ In the Matter of COMMISSIONER OF SOCIAL SERVICES, on Behalf of ELIZABETH S., Respondent, v JULIO J., Appellant. [943 NYS2d 42]—

Order of filiation, Family Court, New York County (Mary E. Bednar, J.), entered on or about November 8, 2010, declaring respondent to be the father of the subject child, reversed, on the law, without costs, and the matter remanded for further proceedings to include the performance of a biological paternity test.

In this paternity proceeding under article 5 of the Family Court Act, petitioner agency failed to establish by evidence that was clear, convincing and entirely satisfactory (*see Matter of Commissioner of Social Servs. v Philip De G.*, 59 NY2d 137, 141-142 [1983]; *Matter of Tanesha H. v Phillip C.*, 57 AD3d 403 [2008]; Sobie, Practice Commentaries, McKinney's Cons Laws of NY, Book 29A, Family Ct Act § 531, at 105 [2009 ed]) that respondent acted as the child's father to such an extent as to give rise to equitable estoppel barring him from denying paternity and rendering a biological paternity test inappropriate (*see* Family Ct Act § 532). There was no evidence that respondent has played a significant role in raising, nurturing or caring for the child, much less that he has ever had an operative parent-child relationship with her (*see Matter of Gutierrez v Gutierrez-Delgado*, 33 AD3d 1133, 1135 [2006] [holding that it was error to apply equitable estoppel where "an established and significant parent-child relationship" was absent]; *cf. Matter of Juanita A. v Kenneth Mark N.*, 15 NY3d 1, 5 [2010] [equitable estoppel "protects the status interests of a child in an already recognized and operative parent-child relationship"] [internal quotation marks omitted]; *Matter of Enrique G. v Lisbet E.*, 2

AD3d 288, 289 [2003] [applying equitable estoppel to avoid "disruption of (the child's) close relationship" with the putative father]).

While respondent did not deny that he has maintained an intermittent and essentially avuncular relationship with the child, petitioner made no showing that respondent has affirmatively fostered such a strong bond with the child as to estop him from denying paternity. Although respondent admitted that he visited the mother in the hospital when the child was born, he declined to sign an acknowledgment of paternity at that time. As to his interactions with the child herself, the evidence shows, at most, that he did not object when the child called him "Daddy" during their sporadic encounters; that he gave her one- or five-dollar bills when she asked him for money; that he occasionally gave her gifts or took her shopping; and that, on at least one occasion, he took her to a park. Petitioner made no showing that respondent's contacts with the child occurred with any degree of regularity or were sufficient to render him a significant presence in her life (*cf. Matter of Sarah S. v James T.*, 299 AD2d 785, 785-786 [2002] [although the "respondent played a limited role" in the child's life, equitable estoppel was applied where, inter alia, he "spent meaningful time with the child" and had weekly telephone calls with him]). During respondent's two years of military service, it is undisputed that he had no interaction with the child at all, even by telephone. Moreover, the child did not testify at the hearing, nor did the court interview her in camera. It is true that the child (who remained ignorant of the nature of the proceeding) identified respondent as her father and talked positively about him in an out-of-court interview with her court-appointed attorney. Nonetheless, her responses to the attorney's leading questions are consistent with a warm but distant relationship and do not suffice to demonstrate by clear and convincing evidence that conducting a biological test would be contrary to her best interests. In sum, on this record, petitioner has not demonstrated that a finding that respondent is not her father would cause the child to suffer "irreparable loss of status, destruction of her family image, or other harm to her physical or emotional well-being" (*Matter of Derrick H. v Martha J.*, 82 AD3d 1236, 1239 [2011] [internal quotation marks omitted]) so as to warrant imposition of equitable estoppel under Family Court Act § 532. Concur—Saxe, J.P., Friedman and Freedman, JJ.

Moskowitz and Richter, JJ., dissent in a memorandum by Richter, J., as follows: Following a hearing, the Family Court Judge, who had an opportunity to observe the witnesses and as-

sess their demeanor, made fact-findings that are consistent with the mother's testimony. The majority, in reversing, largely adopts respondent's testimony, which Family Court discredited to a great extent, and fails to recognize controlling law, which dictates that the best interests of the child are the exclusive consideration in determining whether equitable estoppel applies; therefore, I dissent.

By the time of the hearing on the paternity proceeding, the child was eight years old. In March 2002, about two months before the child's birth, the mother informed respondent that she was pregnant. Respondent, accompanied by his own mother, came to the hospital when the child was born and visited for approximately two hours. The mother testified that respondent brought a stroller and three outfits for the child, and held the child while he was there.

Shortly after the child was born, respondent joined the military and was stationed in Colorado for approximately two years. He did not have any contact with the mother and child during this time. It is unclear, based on the hearing testimony, when respondent reentered the child's life. The mother agreed at the hearing that during the first four years of her daughter's life, they had "bumped into" respondent in the neighborhood a number of times and he would identify himself as the child's dad. Further, the mother stated that respondent was the only man the child had called "Daddy" and the only man she, the mother, had ever introduced to the child as "Dad." Respondent would even ask the child, "Who am I?" and the child would respond, "Daddy."

Respondent also gave the child money on various occasions, anywhere from one dollar to ten dollars, in addition to buying her candy when she asked for it or if she was hungry. The mother testified that respondent would call her cell phone to get in touch with the child, to ask how the child was doing, and to speak with her. The child also had met a few members of respondent's family and had visited his sister at her house. Indeed, the mother stated, that when the child saw respondent around the neighborhood, she would openly call him "Daddy" and he would not attempt to correct her otherwise. Moreover, both the mother and the Attorney for the Child informed the court that the child had expressed a desire to spend as much time as possible with respondent.

In addition to allowing and even encouraging the child to call him "Dad," respondent also showered her with gifts. Shortly before the paternity proceedings began, he took the child on a "shopping spree" at a local store, buying her summer clothes,

pants, shirts, underwear, and a bookbag. Respondent also gave the child birthday presents, including clothes and an educational game. Further, respondent and his current girlfriend gave the child a coat and boots as an Easter present, and respondent's girlfriend bought the child gifts on another occasion as well.

At the hearing, respondent explained that he had given these gifts to the child as a "friendly gesture," and that he had treated other needy children in a similar fashion. Family Court found respondent's explanation to be unpersuasive, and noted that many of the contacts respondent had made with the child appeared to be fatherly. Family Court also rejected respondent's testimony that he had let the child call him "Daddy" because he had not wanted to correct her and confuse her, or respond to her in a "negative reaction."

After hearing from the mother, respondent, and the Attorney for the Child, the court determined that it would be to the child's detriment to direct a DNA test. The court found that the child knew respondent as her father and that she had expressed to both her attorney and her mother a desire to spend more time with him. Furthermore, the court noted that respondent had done nothing to dissuade the child of this view, and in fact, had encouraged the development of a parent-child relationship in the child's eyes. The court had an opportunity to view the witnesses and make credibility determinations, and its findings should be accorded great deference on appeal (*Matter of Celenia M. v Faustino M.*, 77 AD3d 486 [2010], *lv denied* 16 NY3d 702 [2011]).

The seminal case involving paternity and equitable estoppel is *Matter of Shondel J. v Mark D.* (7 NY3d 320 [2006]). The *Shondel* Court stated that "the only issue for the court is how the interests of the child are best served" (*id.* at 331). The critical factors to be considered are whether respondent held himself out to be the father; if the child justifiably relied on this representation; and if the child will be harmed by the denial of paternity (*id.* at 327). Equitable estoppel, a remedy based in fairness, protects "the status interests of a child in an already recognized and operative parent-child relationship" (*Matter of Juanita A. v Kenneth Mark N.*, 15 NY3d 1, 5 [2010] [internal quotation marks omitted]). Indeed, in such proceedings "the issue does not involve the equities between the two adults; the case turns exclusively on the best interests of the child" (*Shondel*, 7 NY3d at 330).

Here, despite the majority's attempt to minimize the contact between respondent and the child, the Family Court properly determined that respondent held himself out as the child's

father and that the child justifiably relied on this representation to her detriment (*id.* at 327). The mother testified that respondent was the only man she had ever introduced into the child's life as the father and the only man the child called "Daddy." Respondent confirmed that the child did indeed call him "Daddy" and that he had made no effort to disavow her of that notion. He even acknowledged that when the child saw him in the courthouse for one of the proceedings, she ran towards him and hugged him.

The majority describes respondent's role in the child's life as intermittent and sporadic, and therefore determines that respondent did not affirmatively foster a strong bond with the child. However, during the child's entire life, respondent has led her to believe he is her father. Indeed, respondent testified that he had seen the child five times in 2010 alone, which was the same amount as during all the previous years combined. Respondent had increased the amount of time he was spending with her and had bought her gifts, thereby solidifying his bond with her.

Even if "the relationship between respondent and the child was somewhat limited, the Family Court properly concluded that the best interests of the child required that respondent be estopped from denying paternity" (*Matter of Commissioner of Social Servs. v Victor C.*, 91 AD3d 417, 418 [2012]). The Attorney for the Child, after interviewing the child, reported to the court that she had expressed a desire to spend more time with her dad. The child even told her attorney that when she was born respondent had visited her and her mother in the hospital and that he had held her, a fact that was important to the child. The child has developed a bond with respondent, one that he has encouraged and actively developed in the past year. She knows him as her dad, and desires to spend "24 hours a day with him" according to the mother. At the time of the hearing the child was eight years old. To now, at this stage in her life, order a DNA test and let her know that respondent questions his bond with her would be detrimental to her and would cause her to suffer irreparable loss of status (*compare Matter of Derrick H. v Martha J.*, 82 AD3d 1236, 1239 [2011]).*

In the eight years since the child's birth, respondent has not sought a paternity test, despite his claims that he raised the is-

---

\* The majority, in pointing out that the child did not testify at the hearing and that the court did not conduct an in camera interview, fails to recognize that had the child been subjected to either she would have realized that respondent was contesting his parental relationship. This would have defeated the purpose of the equitable estoppel hearing.

sue with the mother on various occasions. Respondent had a choice to make; he could "either put the doubts aside and initiate a parental relationship with the child, or insist on a scientific test of paternity *before* initiating a parental relationship" (*Shondel*, 7 NY3d at 331). Respondent here chose the former and should not now be able to insist on a paternity test.

The cases cited by the majority do not mandate a reversal of Family Court. In *Matter of Gutierrez v Gutierrez-Delgado* (33 AD3d 1133 [2006]) it was undisputed that there was a lack of an established parent-child relationship, and the mother had told the respondent he was not the father of either child. Such is not the case here, where the mother testified that respondent is the only man the child has ever known as her dad, that she has developed a bond with him and wishes to spend even more time with him. Further, respondent here engaged in contacts that were fatherly in nature—namely, purchasing the child clothes, underwear, a bookbag, coat, and boots. These are items that a parent, and not a stranger or acquaintance, typically buys for his or her child.

*Matter of Derrick H. v Martha J.* (82 AD3d 1236 [2011], *supra*), also is distinguishable. In that case, the hearing evidence established that no parent-child relationship existed between the alleged father and the three-year-old child, because the two had only limited contact during the first 18 months of the child's life and virtually no contact thereafter; thus, there was no evidence that the child "would suffer irreparable loss of status . . . if [the paternity proceeding] were permitted to go forward" (*id.* at 1239 [internal quotation marks omitted]). By contrast, here, respondent has had contact with the child since birth, with a temporary hiatus for two years while he was in the military, and significantly increased his time with her during 2010. She calls him, and only him, "Daddy" and she has continually expressed a desire to spend as much time with him as possible. Accordingly, petitioner agency established that it was in the best interests of the child that respondent be estopped from denying his paternity and Family Court's ruling should be affirmed.