■ In the Matter of KAREN G., Respondent, v THOMAS G., Appellant. [972 NYS2d 608]—

In a paternity proceeding pursuant to Family Court Act article 5, Thomas G. appeals from an order of filiation of the Family Court, Orange County (Klein, J.), entered November 26, 2012, which, after a hearing, adjudicated him to be the father of the subject child based on the doctrine of equitable estoppel.

Ordered that the order of filiation is reversed, on the facts and in the exercise of discretion, with costs, the petition is denied, and the proceeding is dismissed.

Pursuant to Family Court Act §§ 418 (a) and 532 (a), no paternity test shall be ordered where the court has made a written finding that such a test is not in the best interests of the child on the basis of, inter alia, equitable estoppel. "The paramount concern in applying equitable estoppel in paternity cases is the best interests of the child" (*Matter of Merritt v Allen,* 99 AD3d 1006, 1006-1007 [2012]; *see Matter of Shondel J. v Mark D.,* 7 NY3d 320, 326 [2006]; *Matter of Westchester County Dept. of Social Servs. v Robert W.R.,* 25 AD3d 62, 70-71 [2005]).

Here, the mother of the subject child commenced the instant paternity proceeding against the appellant, the alleged biological father, when the subject child was 15 years old. At the time of the best interests hearing, the subject child was 16 years old. The testimony at the hearing established, among other things, that the appellant and the mother were in a sexual relationship and living together prior to the subject child's birth, and both the appellant and the mother had children with other people both before and after the subject child's birth. The appellant did not acknowledge paternity at the birth of the subject child and was not named on the birth certificate. The mother gave the subject child the appellant's middle and last names, and told the subject child at various times that the appellant was his

father. The appellant lived with the mother until the subject child was approximately seven months old, and thereafter visited the subject child on occasion until the subject child was approximately 18 months old. On an unspecified number of occasions, the subject child visited with some of his alleged half-siblings (the appellant's children) at the home of their aunt, with whom the mother is friendly. The mother conceded that, after the subject child was 18 months old, the appellant had no further contact with the subject child and had no relationship with the subject child. The mother also conceded that her current husband, with whom she has other children, has been in the subject child's life since the subject child was two years old.

Further, it was undisputed that the mother commenced a previous proceeding against the appellant when the subject child was eight months old; the appellant contested his paternity, and the court ordered a genetic marker test, which the appellant was willing to undergo and for which he was willing to pay. The appellant appeared but the mother failed to appear for the court-ordered test, and thereafter, she failed to pursue the proceeding, which was dismissed on October 26, 1999, when the subject child was nearly three years old. The mother commenced the instant proceeding 13 years later, in 2012.

The appellant defended against the instant proceeding on the ground that it was inequitable for the mother to seek paternity testing at this late date when she had failed to comply with the court-ordered genetic marker test in 1999, abandoned that proceeding, and thereafter lived with another man from the time the subject child was two years old. At the close of the hearing, the Family Court found that a genetic marker test was not in the best interests of the subject child because he was 16 years old, but further determined that the appellant was equitably estopped from denying his paternity because no other man had come forward as the biological father.

While we agree that a genetic marker test is not in the best interests of the subject child, the Family Court improvidently exercised its discretion in applying the doctrine of equitable estoppel against the appellant under all of the circumstances, including the undisputed fact that the appellant has had no contact or relationship with the subject child since the child was 18 months old (see *Matter of Derrick H. v Martha J.*, 82 AD3d 1236, 1238-1239 [2011]; cf. *Matter of Shondel J. v Mark D.*, 7 NY3d at 327-328; *Matter of Angelo A.R. v Tenisha N.W.*, 108 AD3d 560 [2013]). Moreover, in appropriate circumstances, the doctrine of equitable estoppel may be asserted defensively by a

purported biological father to prevent a child's mother from asserting biological paternity where a genetic marker test would not be in the best interests of the child (*see Matter of Juanita A. v Kenneth Mark N.*, 15 NY3d 1, 6 [2010]). Here, the Family Court improvidently rejected the appellant's equitable defense. An adverse inference may be taken against the mother for her failure to appear for the court-ordered genetic marker test in 1999, and her failure to pursue that proceeding (*see Matter of Meredith P.B. v Maxwell F.I.*, 193 AD2d 600 [1993]; *see also Matter of Sullivan County Dept. of Social Servs. v Praytush O.*, 223 AD2d 972 [1996]). Thereafter, the mother failed to commence a new proceeding for 13 years, during which time the subject child had no relationship with the appellant and lived with the mother, her current husband, and his half-siblings on the mother's side. Accordingly, a genetic marker test is not in the best interests of the subject child, on the ground that the mother is equitably estopped from asserting the appellant's biological paternity (*see* Family Ct Act § 532 [a]; *Matter of Juanita A. v Kenneth Mark N.*, 15 NY3d at 5). Dillon, J.P., Angiolillo, Dickerson and Cohen, JJ., concur.