Clark, J.
Appeals from three orders of the Family Court of Tioga County (Morris, J.), entered April 22, 2016, which, among other things, granted petitioner’s application, in a proceeding pursuant to Family Ct Act article 5, to adjudicate respondent as the father of a child born to petitioner.
Beginning in January 1999 and continuing through July 2000, petitioner and respondent were involved in an intimate relationship. Thereafter, in August 2000, petitioner met Matthew Q. and, on January 31, 2001, they married. Roughly three weeks later, on February 22, 2001, petitioner gave birth to a daughter. Petitioner and Matthew Q. separated the following summer and they ultimately divorced in May 2003. In April 2014, when the child was 13 years old, petitioner commenced the first of these proceedings seeking, among other things, an order of filiation adjudicating respondent to be the child’s father. In October 2014, respondent filed a cross petition against Matthew Q., asserting that Matthew Q. was the child’s presumptive father because he was married to petitioner at the time of the child’s birth.* Thereafter, the attorney for the child moved to invoke the doctrine of equitable estoppel against respondent to preclude him from denying paternity, and Matthew Q. filed a petition seeking visitation with the child.
Initially, the matter proceeded to a hearing solely on the issue of whether the presumption of legitimacy could be overcome. Following the hearing, at which only petitioner testified, Family Court concluded that petitioner had presented clear and convincing evidence to exclude Matthew Q. as the child’s father and, thus, had rebutted the presumption of legitimacy. Family Court then conducted a hearing, which included in camera testimony from the child on the issue of equitable estop-pel, at the conclusion of which Family Court determined that *1217 there was insufficient evidence to warrant application of the doctrine. The court further concluded that it was in the child’s best interests to order the parties to submit to genetic marker tests to determine paternity. The results of the court-ordered genetic marker tests indicated that respondent was the child’s biological father and also excluded Matthew Q. as the father. Family Court subsequently issued an order of filiation adjudicating respondent to be the child’s father, an order dismissing respondent’s paternity petition against Matthew Q. and an order dismissing Matthew Q.’s visitation petition for lack of standing. Matthew Q. appeals from all three orders.
Initially, Matthew Q. challenges Family Court’s determination that petitioner rebutted the presumption of legitimacy. A child born during a marriage is presumed to be the biological product of the marriage (see Family Ct Act § 417; Matter of Findlay, 253 NY 1, 7 [1930]; Matter of Barbara S. v Michael I., 24 AD3d 451, 452 [2005]). This presumption, however, may be rebutted upon clear and convincing evidence excluding the husband as the child’s father or otherwise tending to prove that the child was not the product of the marriage (see Matter of Findlay, 253 NY at 7-8; Michaleas v Michaleas, 136 AD3d 616, 617 [2016]; Matter of Penny MM. v Bruce MM., 118 AD2d 979, 979 [1986]).
Here, petitioner acknowledged that she was married to Matthew Q. when the child was born, that he was present for the child’s birth and that the child bears his last name on her birth certificate. However, petitioner’s uncontroverted testimony established that Matthew Q. did not have access to her at the time that the child was conceived in May 2000. Indeed, petitioner stated that she identified the date of conception with her doctor and determined that the child had been conceived during a trip that she and respondent had taken to Ohio prior to ending their monogamous relationship. She also testified that Matthew Q. was incarcerated at the time that the child was conceived and that she did not meet him until several months later in August 2000. Petitioner further testified that Matthew Q. knew that the child was not his biological child prior to marrying her and that he had declined to sign an acknowledgment of paternity following the child’s birth. Moreover, petitioner produced into evidence a 2001 letter from Matthew Q. in which he acknowledged that he was not the child’s father. In view of this uncontroverted evidence, the record provides ample support for Family Court’s conclusion that petitioner rebutted the presumption of legitimacy by clear and convincing evidence (see Matter of Findlay, 253 NY at 9-10; *1218 Matter of Jason E. v Tania G., 69 AD3d 518, 519 [2010]; compare Matter of Backus v Backus, 72 AD2d 893, 893-894 [1979]).
Matthew Q. also contends that Family Court prevented him from asserting the doctrine of equitable estoppel against petitioner to preclude her from claiming that respondent is the child’s father. This contention, however, is belied by the record, as Matthew Q. did not at any point invoke the doctrine of equitable estoppel against petitioner and, thus, his arguments with respect thereto are unpreserved (see Batales v Friedman, 144 AD3d 849, 851 [2016]; Conner v State of New York, 268 AD2d 706, 707 [2000]). As observed by Family Court, only the attorney for the child invoked the doctrine of equitable estoppel, and she did so to preclude respondent from denying paternity. Nevertheless, Family Court concluded that, had Matthew Q. sought to estop petitioner from claiming that respondent was the child’s father (see Matter of Juanita A. v Kenneth Mark N., 15 NY3d 1, 6 [2010]; Matter of Shondel J. v Mark D., 7 NY3d 320, 327 [2006]; Matter of Sharon GG. v Duane HH., 95 AD2d 466, 468-469 [1983], affd 63 NY2d 859 [1984]), it would have found that Matthew Q. failed to satisfy his initial evidentiary burden of establishing that he and the child had a parent-child relationship (see Michaleas v Michaleas, 136 AD3d at 617; Matter of Patrick A. v Rochelle B., 135 AD3d 1025, 1026-1028 [2016], lv dismissed 27 NY3d 957 [2016]), so as to shift the burden to petitioner to prove that it was nonetheless in the child’s best interests to order genetic marker testing (see Matter of Patrick A. v Rochelle B., 135 AD3d at 1026; Matter of Edward WW. v Diana XX., 79 AD3d 1181, 1182 [2010]; Matter of Sharon GG. v Duane HH., 95 AD2d at 469). Were Matthew Q.’s equitable estoppel arguments properly before us, we would find the same, as the record evidence demonstrates that Matthew Q. had not had contact with the child since she was a baby and he had been incarcerated for most of her life (see Matter of Sidney W. v Chanta J., 112 AD3d 950, 953-954 [2013]; compare Matter of Dustin G. v Melissa I., 69 AD3d 1019, 1020 [2010], lv denied 14 NY3d 708 [2010]).
We are unpersuaded by Matthew Q.’s further contention that genetic marker testing was not in the child’s best interests. Considering the child’s age and maturity and the attorney for the child’s indication that the child had an interest in knowing with certainty the identity of her biological father, as well as the absence of any “evidence that [she] would suffer irreparable loss of status, destruction of [her] family image, or other harm to [her] physical or emotional well-being if testing were *1219 permitted” (Michaleas v Michaleas, 136 AD3d at 617; see Matter of William X. v Linda Y., 132 AD3d 1195, 1197 [2015]), we agree with Family Court that genetic marker testing was in the child’s best interests (see Matter of Sidney W. v Chanta J., 112 AD3d at 953-954; Matter of Derrick H. v Martha J., 82 AD3d 1236, 1239 [2011]).
To the extent that we have not discussed any of Matthew Q.’s remaining arguments, they have been examined and found to be without merit.
McCarthy, J.P., Egan Jr., Lynch and Devine, JJ., concur.
Ordered that the orders are affirmed, without costs.

 Matthew Q. was joined as a necessary party on petitioner’s paternity petition.