Matter of Montgomery County Dept. of Social Servs. v Jose Y. (2019 NY Slip Op 04507)





Matter of Montgomery County Dept. of Social Servs. v Jose Y.


2019 NY Slip Op 04507


Decided on June 6, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 6, 2019

525201

[*1]In the Matter of MONTGOMERY COUNTY DEPARTMENT OF SOCIAL SERVICES, on Behalf of MELISSA W., Respondent,
v
JOSE Y., Respondent, and DANIEL X., Appellant.

Calendar Date: April 29, 2019

Before: Egan Jr., J.P., Lynch, Clark, Mulvey and Pritzker, JJ.


Michelle Rosien, Philmont, for appellant.
Robert J. Kruger, Montgomery County Department of Social Services, Fultonville, for Montgomery County Department of Social Services, respondent.
Erin K. Hayner, Saratoga Springs, for Melissa W.
Karen R. Crandall, Schenectady, attorney for the child.



MEMORANDUM AND ORDER
Egan Jr., J.P.
Appeal from an order of the Family Court of Montgomery County (Cortese, J.), entered April 20, 2017, which, in a proceeding pursuant to Family Ct Act article 5, adjudicated respondent Daniel X. as the father of a child born to Melissa W.
Melissa W. (hereinafter the mother) is the unmarried mother of a child (born in 2012). In March 2016, the mother filed a paternity petition alleging that respondent Jose Y. was the child's father. In May 2016, petitioner also filed a petition for paternity and support, on behalf of the mother,[FN1] likewise alleging that Jose Y. was the father of the child. At an August 2016 appearance before a Support Magistrate, the mother asserted that a genetic marker test would be "extremely detrimental to [her] child" and orally moved to dismiss both petitions against Jose Y., alleging that, since the child's birth, another individual, respondent Daniel X., had previously [*2]established a parent-child relationship with the child [FN2]. Based on the mother's assertions, the Support Magistrate determined that the mother was essentially asserting an equitable estoppel claim and referred the matter to Family Court.
The mother thereafter failed to appear at the first appearance before Family Court, and the court dismissed her paternity petition without prejudice [FN3]. Daniel X. was thereafter summoned to appear as an interested party with respect to petitioner's paternity petition and, at a November 1, 2016 court appearance, he was served with a copy of the petition and named as a respondent in this proceeding. Following a fact-finding hearing, Family Court determined that Jose Y. was equitably estopped from asserting paternity and that Daniel X. was equitably estopped from denying paternity based on the fact that he held himself out as the father of the subject child and it would be detrimental to the child's best interests to disrupt the parent-child relationship that has been established. Family Court also entered an order of filiation, declaring Daniel X. to be the father of the child. Daniel X. now appeals, and we affirm.
We reject Daniel X.'s contention that his right to procedural due process was denied in this paternity proceeding. Initially, Family Court properly joined Daniel X. as a respondent given that, as a putative father, he was an interested and necessary party for purposes of not only protecting his own rights, but determining the nature and quality of his relationship with the child so as to enable Family Court to render a proper determination as to the child's best interests (see Matter of Juanita A. v Kenneth Mark N., 15 NY3d 1, 6 [2010]; Matter of Edward WW. v Diana XX., 79 AD3d 1181, 1183 n [2010]; Matter of Richard W. v Roberta Y., 212 AD2d 89, 91 [1995]; see also CPLR 1001 [a]). Further, and contrary to Daniel X.'s contention that he did not receive proper notice of the proceeding, the record contains an affidavit of service demonstrating that he was personally served with the subject petition in October 2016. Although he failed to appear at the next scheduled court appearance, he did appear before Family Court on November 1, 2016 and, given his continued assertion that he was never served, Daniel X. was provided with a copy of the petition on that day, in open court. Family Court also informed Daniel X. of the nature of the proceeding, that the purpose thereof was to determine who is or should be deemed the father of the child, explained the general principles of equitable estoppel and assigned counsel to represent him at all further proceedings (see Family Ct Act § 262 [a] [viii]). At the ensuing fact-finding hearing, Daniel X. appeared with counsel and was provided the opportunity to make opening and closing statements, presented evidence on his own behalf — including his own testimony — made relevant objections and cross-examined witnesses. Lastly, Family Court properly took judicial notice of all prior proceedings in this matter, without any objection from the parties (see Matter of Wilson v McCray, 125 AD3d 1512, 1512 [2015], lv denied 25 NY3d 908 [2015]), and there is nothing in the record demonstrating that Daniel X. was denied access to or was otherwise prevented from adequately reviewing those prior proceedings in preparation for the subject hearing. Accordingly, we discern no violation of Daniel X.'s due process rights, as he had adequate notice of the subject fact-finding hearing and was provided a full and fair opportunity to be heard with respect to the paternity petition (see Matter of Michael S. v Sultana R., 163 AD3d 464, 473-474 [2018]; cf. Matter of Kimberly RR. [Gloria RR.—Pedro RR.], 165 AD3d 1428, 1430 [2018]; Matter of Gary MM. [Girard MM.], 100 AD3d 1206, 1207 [2012]).
Turning to the merits, it is well settled that "[t]he party seeking to prove paternity, whether by estoppel or otherwise, must do so by clear and convincing evidence" (Matter of Commissioner of Social Servs. v Julio J., 20 NY3d 995, 997 [2013]; see Matter of Suffolk County Dept. of Social Servs. v James D., 147 AD3d 1067, 1068 [2017]; Matter of Clovsky v Henry J., 238 AD2d 670, 670 [1997], lv dismissed 91 NY2d 911 [1998]). The purpose of imposing equitable estoppel is "to protect the status interests of a child in an already recognized and operative parent-child relationship" (Matter of Shondel J. v Mark D., 7 NY3d 320, 327 [*3][2006] [internal quotation marks and citation omitted]; see Matter of John J. v Kayla I., 137 AD3d 1500, 1501 [2016]; Matter of Dustin G. v Melissa I., 69 AD3d 1019, 1019-1020 [2010], lv denied 14 NY3d 708 [2010]). Therefore, "[p]ursuant to Family Ct Act § 532 (a), a genetic marker test may not be ordered if it is not in the best interests of the child on the basis of . . . equitable estoppel" (Matter of Schenectady County Dept. of Social Servs. v Joshua BB., 168 AD3d 1244, 1244 [2019] [internal quotation marks and citation omitted]; see Matter of Mario WW. v Kristin XX., 149 AD3d 1227, 1227 [2017]). Although the paramount concern in a paternity proceeding is the child's best interests (see Matter of Juanita A. v Kenneth Mark N., 15 NY3d at 5; Matter of Kristen D. v Stephen D., 280 AD2d 717, 719 [2001]), Family Ct Act article 5 "still retains as an objective the protection of the public from bearing the cost of supporting children where there exists a viable, legally obligated source of support" (Matter of Suffolk County Dept. of Social Servs. v James D., 147 AD3d at 1068 [internal quotation marks, ellipsis and citation omitted]; see Family Ct Act § 522). In reviewing a paternity determination, we accord great deference to Family Court's findings of fact and credibility determinations (see Matter of Patrick A. v Rochelle B., 135 AD3d 1025, 1028 [2016], lv dismissed 27 NY3d 957 [2016]; Matter of Vicki W. v Michael X., 235 AD2d 870, 871 [1997]).
The mother testified that she has been in an "on and off" relationship with Daniel X. for approximately seven years and that, since the birth of the child, Daniel X. has, at all relevant times, acted as the child's father. According to the mother, when the child was an infant, Daniel X. would provide diapers, baby supplies and food. He also provided the mother with money to purchase Christmas and birthday presents, school supplies and clothes for the child and contributed towards the mother's cable bill and the cost of school photographs. Although the mother acknowledged that she and Daniel X. have never lived together, she testified that he would frequently stay at her residence "[f]or days on end" and, during such time, he would help with daily activities, including feeding and dressing the child, putting her to bed at night and caring for her when she was sick. Most significantly, the mother testified that the child, who was nearly four years old at the time of the hearing, had established an emotional attachment to Daniel X. He is the only person that she calls "daddy," he is responsive to being called "daddy" and, according to the mother, Daniel X. tells the child that he loves her.
Although Daniel X. testified on his own behalf and denied ever having sexual intercourse with the mother or having any contact with the child, Family Court found his testimony to be "palpably unbelievable." Given the mother's largely unconverted testimony regarding the financial support that Daniel X. provided, the emotional bond established between the child and Daniel X. and giving deference to Family Court's fact-finding and credibility determinations, under these circumstances, we find that Family Court appropriately concluded that it was in the child's best interests to equitably estop Daniel X. from denying paternity (see Matter of Kerry Ann P. v Dane S., 121 AD3d 470, 471 [2014]; Matter of Glenda G. v Mariano M., 62 AD3d 536, 536 [2009], lv denied 13 NY3d 708 [2009]; Matter of Savel v Shields, 58 AD3d 1083, 1084 [2009]; Matter of Sarah S. v James T., 299 AD2d 785, 785-786 [2002]; compare Matter of Starla D. v Jeremy E., 95 AD3d 1605, 1606-1607 [2012], lv dismissed 19 NY3d 1015 [2012]).
Lynch, Clark, Mulvey and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Petitioner filed its petition because the mother and the child receive public assistance (see Family Ct Act § 522).

Footnote 2: In 2014, the mother previously filed a paternity petition alleging that Daniel X. was the father of the child; however, she withdrew said petition in February 2015.

Footnote 3: Following her failure to appear, Family Court issued a warrant for the mother's arrest.