Matter of Claudia B. v Darrin M. (2020 NY Slip Op 03861)





Matter of Claudia B. v Darrin M.


2020 NY Slip Op 03861


Decided on July 9, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 9, 2020

Richter, J.P., Oing, Singh, Moulton, JJ.


09495/17 11500A 11500

[*1] In re Claudia B., Petitioner-Respondent,
v
Darrin M., Respondent-Appellant.


Law Office of Brian Esser PLLC, Brooklyn (Brian K. Esser of counsel), for appellant.
Andrew J. Baer, New York, for respondent.
Karen Freedman, Lawyers for Children, Inc., New York (Shirim Nothenberg of counsel), attorney for child.



Order, Family Court, New York County (Adetokunbo O. Fasanya, J.), entered on or about February 15, 2018, which denied respondent's motion to dismiss petitioner's paternity petition on equitable estoppel grounds and ordered him to submit to DNA testing, unanimously affirmed, without costs. Order of filiation, same court and Justice, entered on or about May 24, 2018, which declared respondent the biological father of the subject child, unanimously affirmed, without costs.
Petitioner filed this paternity petition against respondent seeking to have him declared the father of her child. The pertinent facts as alleged by respondent establish the following. Petitioner and respondent were in a relationship from July to October 2008. After the relationship ended, petitioner asked respondent to donate sperm so that she could conceive a child, and he agreed. In October 2009, petitioner sent respondent a draft written agreement which stated that respondent would have no parental rights or responsibilities as to the child and would not be named as the father on the birth certificate, and that petitioner would not seek child support from respondent. It further provided that respondent would be paid a total of $5,000 for 10 vials of semen. Petitioner sent respondent another draft dated December 15, 2009 that was largely unchanged from the October version. In between the two agreements, an email exchange between the parties shows that they were still negotiating terms, and that petitioner intended to "legalize" the document with a notary and witness. Although both of the draft agreements contemplated that they be "executed" by the parties, it is undisputed that neither one was signed.
On December 21, 2009, despite the absence of a final agreement, respondent donated 17 vials of semen to a fertility center. On or about December 28, 2009, petitioner sent respondent another draft agreement that, unlike the prior drafts, provided that his name would appear on the child's birth certificate. Respondent contends that the latest draft was not acceptable to him because he only intended to be a donor and not a parent. In a subsequent email, respondent lamented that petitioner was changing the agreement, and expressed the need for a "legitimate contract."
Respondent contends that he stopped participating in the endeavor, but took no further actions because he was purportedly told by the fertility center that petitioner could not use his semen samples. According to respondent, he learned in the summer of 2012 that petitioner had become pregnant with his sperm. In March 2013, petitioner gave birth to a child. Respondent contends that he has not seen petitioner since he donated the sperm in December 2009, and that he has never met or spoken to the child.
In April 2017, petitioner filed a paternity petition seeking to have respondent declared the father of her child. Respondent argued that petitioner was equitably estopped from bringing the paternity claim because the parties intended that he be a sperm donor only, without any legal [*2]rights or obligations to the child. After briefing from the parties and the attorney appointed for the child, the motion court issued a decision finding that respondent's estoppel claim was inconsistent with New York law, and directing that he submit to DNA testing. After testing revealed respondent to be the father of the child, the court entered an order of filiation.
On appeal, respondent maintains that petitioner should be equitably estopped from seeking to have him declared the father of the subject child. We need not decide whether, under New York law, estoppel is available to foreclose a mother from asserting paternity as to a known sperm donor, because even if it were, respondent's claim would fail. To prevail on estoppel grounds, the moving party bears the burden of proving, by clear and convincing evidence, a right to the relief sought (see Matter of Department of Social Servs. v Donald A.C., 179 AD3d 603 [1st Dept 2020]). Even if we assume the truth of respondent's factual assertions, he failed to meet his burden.[FN1]
Respondent's estoppel claim rests on the premise that the parties had a binding preconception agreement. Contrary to respondent's contention, there was no binding enforceable oral or written agreement between the parties, either before or after respondent donated his sperm. There is no dispute that a signed contract does not exist. Nor was any final oral agreement reached. Indeed, respondent's own affidavit and exhibits show that at the time he provided his semen samples, the parties were continuing to negotiate terms, and that he knew that there was no finalized agreement in place. Further, a week after he donated his sperm, he acknowledged that there was still no "legitimate contract" between him and petitioner concerning his status. Moreover, the draft agreement that he received after the sperm donation differed from the earlier versions on the critical issue of his recognition as a father. Under the facts presented here, we reject respondent's claim that certain alleged fraudulent conduct on petitioner's part after the sperm donation is sufficient to warrant the invocation of equitable estoppel.
Respondent's reliance on Matter of Joseph O. v Danielle B. (158 AD3d 767 [2d Dept 2018]) and Matter of Christopher YY. v Jessica ZZ. (159 AD3d 18 [3d Dept 2018], lv denied 31 NY3d 909 [2018]) is misplaced. These cases involved preconception agreements with reciprocal waivers of paternity and child support claims between a same-sex married female couple, on the one hand, and a known sperm donor on the other. The courts in those cases applied equitable estoppel to thwart the donor's paternity claims because they threatened to harm the parent/child bonds that had developed (see Christopher YY., 159 AD3d at 32), a fact pattern not presented here. Neither case supports respondent's claim that an unsigned, nonfinal preconception agreement can be used to equitably estop a mother from asserting paternity as to a known sperm donor. Accordingly, we need not decide whether the motion court was correct in concluding that even if there had been a meeting of the minds, equitable estoppel could not be invoked by a known sperm donor under the circumstances here (see e.g. Matter of Juanita A. v Kenneth Mark N., 15 NY3d 1 [2010]; see also Ferguson v McKiernan, 596 Pa 78, 940 A2d 1236 [2007]).
Respondent did not request a hearing during the proceedings before the motion court, and even were we to address his unpreserved argument that the court erred by not granting him one, we would reject it. Respondent does not explain what information he would have elicited on petitioner's cross-examination that would have buttressed his estoppel claim. Although respondent asserts that a hearing was necessary given
the documentary evidence of a meeting of the minds regarding his status as a mere donor, respondent's own submissions show, to the contrary, that no such meeting was reached.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JULY 9, 2020
CLERK



Footnotes

Footnote 1: Petitioner presents a different view of some of the critical facts.