Matter of Montgomery County Dept. of Social Servs. v Trini G. (2021 NY Slip Op 03489)





Matter of Montgomery County Dept. of Social Servs. v Trini G.


2021 NY Slip Op 03489


Decided on June 3, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:June 3, 2021

528367
[*1]In the Matter of Montgomery County Department of Social Services, on Behalf of Donavin E., Petitioner,
v
Trini G., Respondent, and Reymond F., Appellant.

Calendar Date:April 29, 2021

Before:Garry, P.J., Clark, Aarons, Reynolds Fitzgerald and Colangelo, JJ.

Claudio & Associates, PC, Jamaica (Desiree M. Claudio of counsel), for appellant.
James P. Melita, Guilderland, for respondent.
Vickie J. Prager, Northville, attorney for the child.



Colangelo, J.
Appeal from an order of the Family Court of Montgomery County (Cortese, J.), entered December 17, 2018, which granted petitioner's application, in a proceeding pursuant to Family Ct Act article 5, to, among other things, adjudicate respondent Reymond F. as the father of a child born to Franlene E.
In April 2018, petitioner commenced this proceeding seeking to establish paternity and collect child support on behalf of the subject child (born in 2005), who was in its care, having been removed from his mother's care pursuant to a proceeding commenced against her under Family Ct Act article 10.[FN1] At the time this petition was filed, the child was 13 years old, and had no adjudicated father and no father listed on his birth certificate. The proceeding was initially brought against respondent Trini G., with whom the mother and the child lived for approximately nine years and who was alleged to have held himself out as the child's father. The mother and Trini G. also have a son in common (born in 2010), who is not at issue herein. In June 2018, based upon allegations that respondent Reymond F. was the child's father, Reymond F. was added as a named respondent to the petition. Reymond F. then sought an order for a genetic marker test, which petitioner opposed on the ground of equitable estoppel. Family Court denied the request, finding that Reymond F., who "never definitively took steps to dissuade the child or anyone else that he was NOT the father," was equitably estopped from denying paternity. Family Court therefore granted petitioner's application, and this appeal by Reymond F. ensued.
Reymond F. contends that Family Court erred in denying his request for an order for a genetic marker test and estopping him from denying paternity of the child, arguing that petitioner failed to make a prima facie showing that he and the child had an already recognized and operative parent-child relationship to support invoking equitable estoppel. "A court's paramount concern in a paternity proceeding is the child's best interests" (Matter of Schenectady County Dept. of Social Servs. v Joshua BB., 168 AD3d 1244, 1244 [2019] [internal quotation marks and citations omitted]; see Matter of Juanita A. v Kenneth Mark N., 15 NY3d 1, 5 [2010]). "[I]t is well settled that 'the party seeking to prove paternity, whether by estoppel or otherwise, must do so by clear and convincing evidence'" (Matter of Montgomery County Dept. of Social Servs. v Jose Y., 173 AD3d 1273, 1275 [2019] [brackets omitted], lv dismissed 34 NY3d 1010 [2019], quoting Matter of Commissioner of Social Servs. v Julio J., 20 NY3d 995, 997 [2013]). Petitioner, as the party asserting equitable estoppel here, "must first make a prima facie showing that [Reymond F.] and the child had a parent-child relationship, so as to shift the burden to [Reymond F.] to prove that it was nonetheless in the child's best interests to order genetic marker testing" (Matter of Stephen N. v Amanda O., 173 AD3d 1280, 1282[*2][2019] [internal quotation marks and citation omitted], lv dismissed 34 NY3d 1033 [2019]). "The purpose of imposing equitable estoppel is 'to protect the status interests of a child in an already recognized and operative parent-child relationship'" (Matter of Montgomery County Dept. of Social Servs. v Jose Y., 173 AD3d at 1275, quoting Matter of Shondel J. v Mark D., 7 NY3d 320, 327 [2006]; see Matter of John J. v Kayla I., 137 AD3d 1500, 1501 [2016]). "Therefore, pursuant to Family Ct Act § 532 (a), a genetic marker test may not be ordered if it is not in the best interests of the child on the basis of equitable estoppel" (Matter of Montgomery County Dept. of Social Servs. v Jose Y., 173 AD3d at 1275-1276 [internal quotation marks, brackets, ellipsis and citations omitted]; see Family Ct Act § 418 [a]). The application of the doctrine of equitable estoppel does not involve the equities between adult participants to the paternity proceedings (see Matter of Starla D. v Jeremy E., 95 AD3d 1605, 1606 [2012], lv dismissed 19 NY3d 1015 [2012]). "Rather, in the context of a paternity proceeding, it is the child's justifiable reliance on a representation of paternity that is considered and, therefore, the doctrine of equitable estoppel will be applied only where its use furthers the best interests of the subject child" (id. [internal quotation marks, brackets and citations omitted]).
Based upon our review of the record as a whole, we find that Family Court erred in denying Reymond F's request for a genetic marker test, resulting in equitably estopping him from denying paternity. The trial testimony established that the mother and Trini G., the mother's boyfriend with whom she and her children lived for nine years (from the time the child was two to three months old), "co-parented" all of the children by contributing financially to their care and feeding, bathing and playing with them. Trini G. referred to the child as "stepson" and the child called him "daddy." The record established that Reymond F. had no contact with the child since birth, except during sporadic visits between Reymond F. and his two older children. Reymond F. testified that he did not do "anything" with the child during these visits, was not called "dad" and did not call the child "son." He further testified that he never called the child on the phone, never gave him gifts and never checked on his educational or medical issues. The mother testified that, while she did not encourage the child to have a relationship with Reymond F., the child knew that Reymond F. was his biological father.
Family Court, in crediting the mother's testimony that she and Reymond F. were in an exclusive sexual relationship at the time the child was conceived, discredited Reymond F.'s denial of paternity since "[h]e never definitively took steps to dissuade the child or anyone else that he was NOT the father." However, the court may have overlooked the absence in the record of any indication that [*3]Reymond F. "played a significant role in raising, nurturing or caring for the child" (Matter of Starla D. v Jeremy E., 95 AD3d at 1607 [internal quotation marks and citation omitted]), "provided food, clothing and shelter for the child for most of his life" (Matter of Edward WW. v Diana XX., 79 AD3d 1181, 1183 [2010]) or otherwise "carried out all the traditional responsibilities of a father" (Matter of Kristin D. v Stephen D., 280 AD2d 717, 719 [2001]). We therefore find that petitioner failed to make a prima facie showing of a recognized and operative parent-child relationship wherein the status interests of the child needed to be protected by imposing equitable estoppel (see Matter of Montgomery County Dept. of Social Servs. v Jose Y., 173 AD3d at 1275). Accordingly, a careful review of the record does not reveal that the child would "suffer irreparable loss of status or other physical or emotional harm" if a genetic marker test were ordered (Matter of Stephen N. v Amanda O., 173 AD3d at 1284 [internal quotation marks and citation omitted]). As we find that Family Court's determination to apply equitable estoppel to preclude genetic marker testing was not supported by a sound and substantial basis in the record (see Matter of Beth R. v Ronald S., 149 AD3d 1216, 1218 [2017]; Matter of Starla D. v Jeremy E., 95 AD3d at 1607), the order must be reversed and the matter remitted for a genetic marker test to be administered.[FN2] In light of this determination, the remaining contentions raised by Reymond F. and petitioner are rendered academic.
Garry, P.J., Clark, Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is reversed, on the law, without costs, and matter remitted to the Family Court of Montgomery County for further proceedings not inconsistent with this Court's decision.



Footnotes

Footnote 1: The child's mother surrendered her parental rights to this child and her two older children, fathered by respondent Reymond F., in settlement of the petitions filed to terminate her parental rights pursuant to Family Ct Act article 10. The abuse petition against the mother with respect to the youngest child was settled with an award of custody to respondent Trini G.

Footnote 2: Significantly, the attorney for the child supports Raymond F.'s request for a genetic marker test as being in the best interests of the child.